Adams *v.* Saratoga and Washington Railroad Co.

---

# Adams *vs.* The Saratoga and Washington Railroad Company.

When the owner of real estate in a village lays out a street through the same, and divides the land on each side of it into village lots, which he sells to individuals in fee, commencing his boundary at a stake in the line of the highway, but not including the highway, by express terms, the respective grantees take to the center of the highway.

A dedication of land to a public street, accepted and acted upon by the public since 1806, can not be revoked by the original owner of the road, or by a person claiming under him, so long as it remains in public use as a street.

The grantee of a lot bounded on a street *prima facie*, takes to the center of the street. To prevent the grant having this effect, there must be language *expressly excluding* the street.

Adams *v.* Saratoga and Washington Railroad Co.

Ejectment will not lie for a street, unless the occupation thereof by the defendants, is *wholly inconsistent with the public easement.*

The effect of a record of the appraisal of damages under the 9th section of the act of 1834, p. 440, in concluding the former owner from a right to recover the same, considered. (*a*)

To allow a street in a city to be used for a railroad track, either upon its natural surface, or by tunneling, is not a misapplication of it; provided such use does not interfere with the free and unobstructed use of it by the public, as a highway for passage and repassage.

In the city of New-York, the legal title to the soil of the streets, is vested in the corporation. In other parts of the state the legal presumption is, that the fee is in the owner of the adjoining lots. *Per* WILLARD, P. J.

THIS was an action of ejectment, commenced on the 25th February, 1848, to recover possession of two several parcels of land in the town of Whitehall, in the county of Washington. The declaration contained several counts, and the plea was the general issue; and no question arose upon the pleadings. The cause was tried before Willard, justice, at the December circuit, 1849, in Washington county.

The *first* piece of land sought to be recovered, is that part of Church-street, in the village of Whitehall, which the defendants occupy for the tracks of their railroad, and through a part of which they had constructed a tunnel for their railroad. The case on the part of the plaintiff was this: In 1806, General Williams was the owner, among other things, of a farm in the now village of Whitehall, called the *Caton hill* lot, containing about 106 acres of land, and embracing what is now called Church-street, and the lots on each side of said street. There were then no buildings or street upon the lot, and it was mostly an open common. In the same year General Williams sold the

(*a*) The court of appeals, at the April term, 1852, reversed the judgment of the supreme court in this case, and ordered a new trial, with costs to abide the event, on the ground that the evidence offered on the part of the defendants to disprove the jurisdictional facts recited in the record of appraisal, should have been received at the circuit. The reversal does not affect the authority of the case on the points above stated. We have inserted the part of the opinion of the supreme court, on the effect of the record as evidence, supposing that it might be useful in the further discussion of the same subject.

lot to Jeremiah Adams, the father of the plaintiff, and the deed
was executed a year or two after, in pursuance of such sale, by
Colonel Williams, the son and devisee of General Williams ; the
latter having in the meantime died.   In 1806, immediately
after the purchase of the lot, Jeremiah Adams went into pos-
session of it, and laid out a street, which is now called Church-
street, and erected a fence on each side of the street.   The
street was 1044 feet long, and 55 feet wide.   He laid out lots
on each side of the street, and erected one or two buildings
thereon, and sold them to others.   All the lots on both sides of
the street, were taken up by different persons, prior to the death
of Adams.   Adams died in 1839, having first duly made his
last will and testament, whereby he devised to his wife Patience
Adams, all the real estate of which he was seised.   Patience
Adams, on the 15th March, 1847, executed to the plaintiff a
warranty deed of all the lands devised to her by the will of her
husband.

Church-street ran nearly north and south.   The defendants'
railroad passes through the center of that street.   The tunnel
occupies 608 feet in length, and 18 in width at the base.   The
stone work extends about three feet further on each side,
making the whole width of the tunnel in the center of the street,
22 feet.   The defendants began to construct their railroad in
April, 1847, and commenced operations at each end of Church-
street, in December, 1847.   The street was impassable as a
highway, by means of the defendants' operations, and so con-
tinued till the commencement of the suit.   It was necessary to
climb ladders to get into the church, situate on the street ; and
in many places it was impossible to go along the street on foot.
These obstructions were made in building the tunnel, and in
preparing the ground therefor.   There was no evidence that the
plaintiff ever owned any lot on either side of Church-street.
The street is now in the compact part of the village of
Whitehall.

The plaintiff's counsel offered to show, that Jeremiah Adams
opened the street originally for his own benefit, and until his
death, always claimed to own the street, and that this claim was

Adams *v.* Washington and Saratoga Railroad Co.

open and notorious. This offer was objected to, and excluded by the court, and the plaintiff's counsel excepted.

The plaintiff's counsel also offered to show that, in all the conveyances of lands along and adjoining Church-street, the descriptions therein were so drawn as to exclude Church-street. This testimony was not objected to. A deed of one of the lots from Spicer to Wright, and of another from Hicks to Jones, were produced, and the boundaries were read in evidence. The starting place of one of the lots, was at a stake standing on the west line of the highway, and being the southeast corner of a lot formerly owned by Chubb, then running south 10° 30′ west, 4 rods, to a stake, then west 60° 30′ north, 15 rods, to a stake ; then north 10° 30′ east, 4 rods, to a cedar post, standing on the south line of the Chubb lot ; then east 10° 30′ south, on Chubb's south line, 15 rods, to the place of beginning, containing 60 rods of land, more or less. It was then admitted that the several deeds from Jeremiah Adams to the grantors above named, Spicer and Hicks, described the premises conveyed in the same way.

The *second* piece of land claimed, was a part of the home farm of Jeremiah Adams, of which he was in possession at the time of his death, and to which the plaintiffs claimed title by the same documentary evidence under which he claimed title to the soil of Church-street. It was admitted that the defendants' railroad passed through the said farm, and occupied about $\frac{88}{100}$ of an acre, of which they were in possession at the commencement of the suit.

The defendants introduced Martin Lee, Esq. county judge of Washington county, and proved by him that an assessment case was completed before him in 1847, and they produced the record under the 9th section of the defendants' act of incorporation. (*See Laws of* 1834, *p.* 440.)

The record was set out at large in the bill of exceptions, and is here inserted, viz.

"In the matter of the Saratoga & Washington Railroad Company, and certain owners of lands on the line of their railroad, for appraisement of damages.

Washington county, ss. Whereas by virtue of the act entitled 'an act to incorporate the Saratoga & Washington Railroad Company,' passed May 2, 1834, the said company were empowered, amongst other things, to purchase, receive, and hold such real estate as might be necessary in accomplishing the objects for which the said incorporation was granted, and by their agents, surveyors and engineers, to enter upon and take possession of, and use all such land and real estate as might be necessary for the construction and maintenance of the single or double railroad, or way, and the accommodation requisite and appertaining thereto, and to receive, hold and take all such voluntary grants and donations of land and real estate, for the purpose of said road, as should be made to the said corporation to aid in the construction, maintenance, and accommodation of the said single and double railroad or way. But, all lands or real estate thus entered upon which were not donations, were required to be purchased by the said corporation of the owner or owners of the same, at a price to be mutually agreed upon between them. And in case of disagreement as to price, and before making any portion of said road on said land, the said corporation, or the owner of said land, might apply by petition to the first judge of the court of common pleas of the county in which said land is situated, who was authorized to proceed to appraise the said lands and damages, in the manner and form directed in and by the act aforesaid. And in case of the inability of said judge to conduct the said proceedings, any other judge of the same court, to whom no reasonable objections were made, was thereby empowered to conduct the same, as by the said act to which reference is hereby made, will more fully appear. And whereas, the lands and real estate, hereinafter described, are necessary for the construction and maintenance of the railroad of said company, and the accommodations requisite and appurtenant thereto. And the said company and John P. Adams, who is the owner of the same, disagree as to the price of the same. And whereas, the said corporation, before making any portion of said road on said land, in and by virtue of the said act, and the several acts amending the same,

Adams *v.* Saratoga and Washington Railroad Co.

did, on the 21st day of April, 1847, apply by petition in the manner directed by said act of incorporation, to John McLean, Esq., first judge of the court of common pleas in the county of Washington, in which said lands are situated ; who thereupon the same day directed the sheriff of the said county to give public notice in at least one newspaper printed in said county, that at some future day, not less than thirty days from the first publication of said notice, the clerk of said county, and the said judge, would proceed to draw at the clerk's office in said county, the names of twelve persons to serve as a jury between the said railroad company and the owners of lands along and adjoining the line of the railroad of said company, as then located in the county of Washington, with whom a disagreement as to the price of such lands then existed, in appraising said lands and the damages the said owners thereof should individually sustain by reason of their appropriation to the use of said company, in the same manner as the names of the persons were then drawn for juries in courts of record. And whereas, the said sheriff, in pursuance of such directions, on the 21st day of April, did give such public notice for more than thirty days, in manner and form as therein directed, in one of the newspapers printed in said county, called the Washington County Post, and therein appointed the 24th day of May, 1847, at ten o'clock, in the forenoon, at the clerk's office of said county, as the time and place of drawing such jury ; at which time and place, the said judge and Henry Shepherd, then being the clerk of said county, attended ; and in pursuance of such notice, drew the names of twelve persons as such jury, in the same manner as the names of persons were then authorized by law to be drawn for jurors in courts of record, who were duly qualified, and to whom no objections were made, and neither of them resided in any town through which the said railroad passes, or was of kin to any of the said owners claiming damages, or interested in the said railroad, or of kin to those who were interested in said railroad, or said damages. And whereas the said judge, on the 5th day of July, 1847, in pursuance of the act entitled 'an act in relation to the judiciary,' passed May 12th, 1847, did order

that the said matter, and all proceedings to be had therein, be transferred to Martin Lee, Esq., who was elected to discharge the duties of county judge of said county, on giving one day's notice of said order; which notice was duly given as therein required. And whereas, the said Martin Lee having taken jurisdiction of said matter, did on the 15th day of July, 1847, by his warrant in writing, duly issued for that purpose, direct said sheriff to summon said jury, and appoint the 10th day of August, 1847, at the hotel kept by Mr. Washburn at Fort Edward, in said county, at 11 o'clock in the forenoon, as the time and place for said twelve persons to be summoned by the said sheriff, to appear as such jury; at which time and place, the undersigned judge appeared, and Daniel T. Payn, Esq. sheriff of the said county, and the said jury who had been duly summoned by the said sheriff also appeared, and in the presence of the parties the said judge duly drew by lot from the said names of the said twelve persons six, who were qualified, and were free from all exceptions, and who were then and there duly sworn well and truly to appraise the lands of certain owners situate along and adjoining the line of the railroad of said company, as then located in the county of Washington, with whom a disagreement as to the price of such lands then existed, and the damages the said owners should sustain by reason of the appropriation of said lands to the use of said company, and a true verdict therein give according to evidence; the names of such jurors so sworn as aforesaid, are hereinafter mentioned. And thereupon the said matter and proceedings were duly adjourned until the 22d day of September then next, at 2 o'clock P. M. at Bordwell's tavern, near Comstock's landing, in the town of Fort Ann, in said county; at which last mentioned time and place, the undersigned judge appeared, and the said jurors and parties also appeared, and such proceedings were thereupon had that the said matter and proceedings were further adjourned until the 16th day of November then next, at 9 o'clock in the forenoon, at the Phœnix hotel in the town of Whitehall, in the said county; at which last mentioned time and place, the undersigned judge appeared. and the said jurors and parties also

appeared; and the said jurors were then and there duly sworn well and truly to appraise the lands of the said John P. Adams, situate along and adjoining the line of the railroad of said com pany, as then located in the town of Whitehall in said county, and the damages the said John P. Adams should sustain by reason of the appropriation of the said lands to the use of the said company, and a true verdict therein give according to evidence. And the said jurors having heard the proofs and allegations of the parties, which were delivered in open court, and in the presence of said parties, a majority of said jurors so sworn as aforesaid, did then and there on the 17th day of November, 1847, duly make up and deliver to the said judge their verdict and award in writing, appraising the said lands and damages aforesaid of the said John P. Adams, at the sum of $350,00; which verdict is in the words and figures following, viz. 'In the matter of the Saratoga and Washington Railroad Company and John P. Adams. We whose names are hereunto subscribed, and seals affixed, being a jury duly elected, tried and sworn before the Hon. Martin Lee, judge of the county courts in and for the county of Washington, in pursuance of the act entitled ' an act to incorporate the Saratoga and Washington Railroad Company,' to appraise the lands of the said John P. Adams, situate along and adjoining the line of the railroad of said company, as at present located in the town of Whitehall, in said county, and the damages the said John P. Adams shall sustain by reason of the appropriation of said lands to the use of said company, having heard the proofs and allegations of the parties, do, upon our oaths. appraise the same at $350,00; which said lands are described as follows, viz. All that certain piece of land situate on the farm now occupied by the said Adams, in the town of Whitehall, in said county, and being that part included within the two outward lines of the railroad of the Saratoga and Washington Railroad Company, as surveyed by James B. Sargent, engineer, in 1847, being a strip two rods in width on each side of the central line of said road, and containing ninety-nine one hundredths of an acre of land. Witness our hands and seals this 17th day of November, 1847. Le Roy

Morey, [L. s.] C. V. K. Woodworth, [L. s.] Archibald Moore, [L. s.] Ansell Roberson, [L. s.] John J. Launouth, [L. s.] Pardon Bassett. [L. s.]' And the same was duly certified by the said judge, and filed in the office of the clerk of the said county. And whereas, due proof has been given to the said judge within thirty days after such assessment, that the amount of the same has been deposited to the credit of the said John P. Adams, by said company, in the Bank of Whitehall, being the place directed by said judge for such deposit; and that all expenses have been fully paid, and at least fourteen days' notice of the time and place of such assessment, was duly given to said John P. Adams; and all the requirements of the said acts having been fully complied with on the part of said company. Now, therefore, I, the said judge, in compliance with said acts, do order and decree, that the said assessments and proceedings be, and the same are in all respects, hereby ratified and confirmed. To the end that after this decree is recorded in the clerk's office of the said county, the said corporation shall be possessed of the premises and real estate above described in the verdict of said jury, and may enter upon and take possession and use the same for the purposes of said railroad, agreeably to the provisions of the several acts aforesaid. In witness whereof, I have hereunto put my hand and seal this 11th day of December, A. D. 1847. Martin Lee, county judge of Washington county.' I certify the preceding to be a true record of the original decree, and of the judge's certificate, indorsed thereon. Recorded December 11, 1847, at 9 A. M. H. Shipherd, clerk."

The plaintiff's counsel objected to the admission of this record in evidence, as being incompetent and immaterial; and insisted that the defendants must first prove by evidence *aliunde*, that the county judge had jurisdiction, and that the preliminary proceedings were taken. He also insisted that the decree was void on its face; that the money required to be deposited was not proved to have been deposited, and it was not shown that when the proceedings were commenced, there was any location of the defendants' road on the plaintiff's land. The court over-

Adams v. Saratoga and Washington Railroad Co.

ruled the objection, and received the evidence, and the plaintiff's counsel excepted.

The defendants' counsel then offered in evidence a certificate of deposit of $350 to the credit of J. P. Adams, signed by the cashier of the bank. This was objected to by the plaintiff's counsel as hearsay, but received by the court, and the plaintiff's counsel again excepted.

The defendants rested, and the plaintiff offered to show that the record was false in every particular; that the recitals therein were false; that at the time notice for drawing the jury was said to have been published the defendants' road was not located on the lands described in the decree. The defendants' counsel objected to this evidence, on the gronnd that the record was conclusive evidence of the facts stated therein, and the court sustained the objection; to which the plaintiff's counsel excepted.

A variety of other offers were made and excluded, which are noticed in the opinion of the court.

The court nonsuited the plaintiff, and his counsel excepted.

*J. Gibson*, for the appellant. I. The plaintiff was improperly nonsuited as to so much of the lands in question as was occupied by the defendants in Church-street, because (1.) Ejectment will lie for lands crossed by a public highway. (*Per Savage, C. J. in Saunders* v. *Wilson*, 15 *Wend.* 338. *citing Goodtitle* v. *Alker*, 1 *Burr.* 133, 145. *See also Lade* v. *Shepherd, Str.* 1004; 10 *Petersd. Abr.* 225, *and cases there cited; Gidney* v. *Earl*, 12 *Wend.* 98; 8 *Am. Com. Law*, 399, *and cases cited; Dovaston* v *Payne*, 2 *Smith's Lead. Cas. Am. ed.* 183, *et seq.; 1 Saund. Pl. and Ev.* 447; 2 *Id.* 396; *Babcock* v. *Lamb*, 1 *Cowen*, 238; *Bac. Abr. Bouv. ed. tit. Highways*, 668, *and cases cited; Pearsall* v. *Post*, 20 *Wend.* 126, *per Cowen, J.; Adams on Eject.* 18, 19; *Benedict* v. *Goit*, 3 *Barb. S. C. R.* 468; *Cortelyou* v. *Van Brundt*, 2 *John.* 357, 363; *Jackson* v. *Hathaway*, 15 *Id.* 447; *Perley* v. *Chandler*, 6 *Mass. Rep.* 454, 457; *Adams* v. *Emerson*, 6 *Pick.* 57, 59; *Commonwealth* v. *Peters*, 2 *Mass. Rep.* 127; *Stackpoole* v. *Healy*, 16 *Id.* 34; *Chambers* v. *Furry*, 1 *Yeates*, 167; *Makepeace* v. *Worden*, 1 *N. Hamp.*

*Rep.* 16; *Mayor, &c.* v. *Swan,* 2 *Wm. Bl.* 11, 16; *Cowen's Tr.* 2d ed. 818, *note* 1; *Runnington on Eject.* 130; 3 *Kent's Com.* 432, 433, *note c, and cases cited,* 5th ed. *; Reed* v. *Leeds,* 19 *Conn. Rep.* 182.) It is said that lands over which there is a public highway can not be recovered in ejectment, as the sheriff can not deliver possession. This objection is sufficiently answered by Lord Mansfield in *Goodtitle* v. *Alker,* (*supra,*) viz. " That the sheriff delivers the possession subject to the easement." It might as well be said that ejectment would not lie for lands subject to an annual rent, as the sheriff can not there give an absolute possession—or for a pew in a church, as the owner is only entitled to the *usufruct,* not the unqualified possession; and yet in both cases ejectment will lie. (*Ithaca Church* v. *Bigelow,* 16 *Wend.* 32. *Baptist Church* v. *Witherell,* 3 *Paige,* 302. *Shaw* v. *Beveridge,* 3 *Hill,* 26.) Again; the statute regulating the action of ejectment provides for the case in question. By 2 R. S. 303, §§ 1, 2, 3, this remedy is allowed where the plaintiff " has a subsisting interest in the premises claimed." By § 30, sub. 6, (*Id.* 307,) it is provided that the verdict shall state such interest as the party is entitled to recover. By § 32, (*Id.* 308,) the judgment shall be that the plaintiff recover possession " according to the verdict." Thus no public right can be affected by the judgment. The verdict might have described the plaintiff's estate as in fee subject to the public highway; if the plaintiff attempted to continue the nuisance erected by the defendants, he could be indicted, or the public could abate it by their own act. It is a uniform rule of the common law, that wherever a right of entry exists and the interest is tangible, ejectment will lie. It has been often held to lie for any thing attached to the freehold whereof the sheriff could deliver possession. If it will lie for things attached to the soil, *a fortiori,* as to the soil itself. The action has been held to lie for a right of common, (*Baker* v. *Roe, Cas. Temp. Hard.* 127; *Newman* v. *Holdmefast, Stra.* 54;) so for a coal mine, (*Comyn* v. *Kyneto, Cro. Jac.* 150; *Comyn* v. *Wheatley, Noy,* 121;) for a fishery, (*King* v. *Old Arlesford,* 1 *T. R.* 358;) for the right to herbage or grass, (*Wheeler* v. *Toulson, Hard.* 330;) and

Adams *v.* Saratoga and Washington Railroad Co.

even for the pasture of 100 sheep, (*Anon.* 2 *Dall.* 95. *Adams on Eject.* 19.)  In all these cases the interest was merely an *usufruct,* but in the case at bar the right claimed is the soil and all trees above and all earth or minerals below its surface.  In the cases cited, the ejectment is subject to the dominant right. So in that under hearing it is subject to the public right of way. The one is not at all inconsistent with the other.  But the reason for this objection is false ·in point of fact; the sheriff can deliver the possession without interfering with or interrupting the public right of passage.  Take for instance the tunnel excavated by the defendants thirty feet below the surface of Church-street, and 600 feet long and 16 feet wide.  What obstacle is there to its delivery by the sheriff to the plaintiff on a writ of possession? None whatever.  The action of ejectment as it exists and is given and regulated by statute in this state, will lie for lands covered by a highway.  It is given in all cases heretofore accustomed, and also in all the cases in which a writ of right might be brought, and by a widow for her dower. (2 *R. S.* 303.)  In order to sustain a statute ejectment, the plaintiff is only required to have " a *valid subsisting interest* in the premises claimed and a right to *recover the same,* OR to recover the *possession* thereof, *or* of some *share,* INTEREST or *portion* thereof to be proved and established at the trial." (2 *R. S.* 303, § 4.) It will thus be seen that the remedy by ejectment under this statute is far more broad and comprehensive than at common law; and the plaintiff claims that such extension of the remedy entitles him to sustain this action, because, the case is one which had it existed previous to the revised statutes would have entitled the plaintiff to maintain a writ of ·right.  But if a writ of right would not lie, the plaintiff is still entitled to sustain this action, as the statute permits an ejectment to be brought whenever a party " is entitled to *recover,* OR to *recover possession.*" The statute thus allows the action, without regard to the question of possession; or to the question of whether his title is a *whole* or a *fraction,* or merely a " share, *interest* or portion." If the party claiming is entitled to recover *any interest* whatever, he can maintain the action—and even a *scintilla* of right is suf-

ficient for that purpose. Had the plaintiff, then, an interest in the land, within this statute? He owned the fee and right of soil in the premises in question; subject, it is true, to a public right of way, which reduced the value of his interest; still, it was an interest in land, and was of some value. If so, he ought to have the statute remedy for its recovery. (2.) But the lands in question had ceased to be a public highway, and *pro tanto* the plaintiff was entitled to recover. The defendants had enclosed the lands sought to be recovered, with stone walls three feet thick and with a permanent iron railing; they claim the entire possession; and exclude all persons from the same for any purpose; and their cars stand thereon and block the way and prevent individuals from the ordinary use and benefit of such lands as a highway. For the defendants under these circumstances to pretend that the lands they occupy are the public highway, is absurd. It is presumed these acts are with the assent of the public, as no dissent has been shown, and the highway ceased to be an open street more than three years since. No attempt to reclaim the public right has been made. It is fair therefore to imply public assent. And so far as the defendants are thus in the exclusive possession of any part of the street, it is, for so much, a discontinuance; and wherever a highway is discontinued in whole or in part, the land reverts *pro tanto*, in full and unqualified dominion to the original owner. (*In the matter of John and Cherry-streets*, 19 *Wend.* 675. *Hooker* v. *Utica Co.* 12 *Id.* 371, 373. *Jackson* v. *Hathaway*, 15 *John.* 447. 2 *Kent's Com. 5th ed.* 307, *note a.* 3 *Id.* 432, 3, *note b, and cases there cited.*) The denial of the right of the plaintiff to recover so much of the street as has ceased to be a public highway, is a denial of his right to recover the whole in case the defendants had taken the whole; for so much as they have taken, they claim to hold exclusively, and the public right of passage in *that* is absolutely gone. (*See Harrison* v. *Parker*, 6 *East*, 154, 160.) The dedication was a right of passage; the owner never parted with the fee; the defendants entered and severed the passage, so that the right dedicated could not be used; and the power to use having ceased, the thing dedicated

Adams *v.* Saratoga and Washington Railroad Co.

reverted to the owner discharged of the right of use by the public. The defendants were mere *wrongdoers* in entering on the right of soil of the plaintiff in this suit, though expressly authorized so to do by law. (*The Seneca Railroad Co.* v. *The Auburn Railroad Co.* 5 *Hill*, 170, 181. *Per Nelson, Ch. J. in Fletcher* v. *The Auburn Co.* 25 *Wend.* 462, 464.) By the common law the fee in the soil over which a road passes remains in the original owner. If the road is vacated by the public, he resumes the exclusive possession. While it is used as a highway, the timber and grass upon its surface and the minerals below it are his ; and he may maintain trespass against any one obstructing the way, or ejectment for its exclusive appropriation. (*See the several cases cited point* 1, *sub.* 4, *and also* 3 *Kent's Com. 5th ed.* 432 ; 5 *Mason,* 195 ; *Fairfield* v. *Williams,* 4 *Mass. Rep.* 427 ; *Tippets* v. *Walker, Id.* 595 ; *Bolling* v. *Mayor, &c.* 3 *Rand.* 563 ; *Harris* v. *Elliot,* 9 *Peters,* 25 ; *per Nelson, C. J. in Cornell* v. *The Butternuts Co.* 25 *Wend.* 365, 368 ; *Com'rs of Canal Fund* v. *Kempshall, per Verplanck, senator,* 26 *Wend.* 414 ; *Woolryche,* 5.) And where the highway is founded on a *dedication,* the *use* of the land only is dedicated ; the title to the soil remains in the landowner. (*Pulley* v. *Municipality,* 18 *Louis. Rep.* 278. *See also Id.* 122, 286. *Mayor, &c.* v. *Ward,* 2 *Stra.* 1238, 9.) The deed from Spicer to Wright, and so of the several deeds of other lands on Church-street, convey by a description which excludes the street, thus : " Beginning at a stake standing in the west line of the highway," (Church-street,) " thence running south 18 deg. 30 m. west," &c. which is the course of that street ; so that this description excludes any part of the street by metes and bounds. It is impossible therefore so to construe the deed as to convey any portion of the street : " for," as was said by Kent, J. in *Jackson* v. *Striker,* (1 *John. Cas.* 286,) " the lands therein described and conveyed are accurately ascertained by metes and bounds and the premises are not included ; and being a corporeal as contradistinguished from an incorporeal hereditament, the road could not pass by any of the general and usual words thrown in at the end of the metes and bounds." (*See also on this subject note b*

to *Jackson* v. *Striker, in* 2*d ed. of John. Cases ; also Jackson* v. *Hathaway, supra ; Cowen & Hill's Notes, p.* 373, *and n.* 315 ; *per Bradish, president, in Child* v. *Starr,* 4 *Hill,* 369, 382 ; *per Bronson, J. in Starr* v. *Child,* 20 *Wend.* 161, *and cases there cited ; per Oakley, Ch. J. in Hammon* v. *McLachlan,* 1 *Sandf. S. C. Rep.* 323, 341.) (3.) The defense of dedication, by the plaintiff's father, of lands in Church-street, wholly fails, so far as concerns the four rods at the extreme south end ; for the lot of which that formed a part was not owned by him until nearly twenty years after he had opened Church-street. There was no pretense to found any dedication of the four rods, and the plaintiff, as to so much, was improperly nonsuited. (4.) It will not be presumed that the occupants of the lots adjacent to Church-street own to the center of the highway ; because such a presumption is never indulged in favor of a mere *occupant.* It is only in favor of an *owner ;* and Adams being shown to be the owner, the occupant is deemed to hold in subordination to his title. Such a presumption will never be indulged in the presence of positive proof as to who is the owner. (*Per Bradish, president, in Child* v. *Starr,* 4 *Hill,* 369, 382 ; *S. P. per Bronson, J. in Starr* v. *Child,* 20 *Wend.* 149, 166.) (5.) If, however, the presumption is indulged, still it is not conclusive ; it is clearly open to explanation and contradiction. (*Child* v. *Starr,* 4 *Hill,* 369, 382. *See also the several cases cited by Bronson, J. in* 20 *Wend.* 162.) In the case at bar, the presumption was rebutted by the evidence received or by that offered and rejected. Adams' claim of title precludes the idea that he had ever parted with the fee. (6.) No such presumption can be indulged as to the unoccupied lots. It must be presumed, as to them, that the plaintiff is the owner. (*The People* v. *Dennison,* 17 *Wend.* 312. *Wendell* v. *The People,* 8 *Id.* 183.) Thus, even on the ground assumed by the defendants' counsel, the nonsuit was improperly granted, because as to those lots, the plaintiff being the owner was presumed to own to the center of the street ; and as to so much of the premises in question as lay adjacent thereto, he was entitled to a verdict.

II. The court erred in not submitting so much of the case as

relates to the lands covered by Church-street, to the jury, and in not receiving the evidence offered by the plaintiff on that subject, because—(1.) The question of dedication to public use, of the lands in Church-street, by the plaintiff's father, and the extent and operation of that dedication was entirely for the jury. It is claimed by the defendants that the dedication extended to the fee; while the plaintiff insists that it was merely a right of way. The court excluded some of the evidence offered by the plaintiff to show the extent of the dedication, and nonsuited the plaintiff, and refused to submit the question to the jury—thus, in effect, holding that it was a dedication of the fee. The question of dedication, like that of adverse possession, should always be submitted to the jury: it is compounded of law and of fact; and the court should never undertake to pronounce upon it as a matter of law. (2.) The court erred in presuming as matter of law that the occupants of lots on Church-street, owned to the center of the street. The court should have submitted the question to the jury. (3.) The court should also have submitted to the jury, whether so much of Church-street as was in the exclusive possession of the defendants, had not ceased to be a public highway. (4.) And for these purposes the court improperly excluded the evidence offered by the plaintiff, showing the nature and extent of the dedication, as inferrible from the act of the person dedicating: as that he ever till his death continued to claim the fee of the street; that this claim was "open, public, and notorious;" that no deed was produced conveying any portion of the street; while, on the contrary, it was shown affirmatively that he had bounded his grantees not *on the street*, but on a line which by metes and bounds excluded the street. But instead of excluding the evidence, it should have been received and submitted to the jury with proper directions. (*Per Stebbins, senator, in Schauber* v. *Jackson,* 2 *Wend.* 9, 59. *Briggs* v. *Prosser,* 14 *Id.* 227, 9. *Per Sutherland, J. in Jackson* v. *Sackett,* 7 *Id.* 94, 100. *Per Savage, Ch. J. in Jackson* v. *Warford,* 7 *Id.* 62, 67. *Hunter* v. *The Trustees of Sandy Hill,* 6 *Hill,* 407, 410. *Parker* v. *Foote,* 19 *Wend.* 309, 315. 3 *Stark. Ev.* 1243. 1

*Id.* 77.  1 *Greenl. Ev. 4th ed.* 58, § 48.    *Rowan's Ex'rs* v.
*Town of Portland,* 8 *B. Monroe,* 250.)

III.  The plaintiff was entitled to recover the premises covered
by the track of the defendants' road over his home farm, because,
(1.) The record of the proceedings on the assessment could not
legally be received in evidence without proof *aliunde* of the pre-
liminary proceedings necessary to confer jurisdiction.   The uni-
form rule is that jurisdiction must be shown where the tribunal is
not one of general jurisdiction.   It is never presumed in favor of
an inferior court or officer executing a special authority.   And the
recital of the facts necessary to confer it, in the order of the
court or officer, is not sufficient evidence *per se,* but there must
be proof of those facts *aliunde.*   In England this rule is well
settled.  (*Per Manning, J. in Rex* v. *All Saints,* 1 *Man. & Ry.*
663, 666, *and per Bayley, J. in the same case.   Rex* v. *Gilkes,*
2 *Id.* 454.   *Stanley* v. *Fielden,* 5 *B. & A.* 425.)   It is claimed
that such is not the law in this state.   In *Barber* v. *Winslow,*
(12 *Wend.* 102,) such recitals were held to be *prima facie* evi-
dence, and *Jencks* v. *Stebbins,* (11 *John.* 224,) is cited to sustain
this view.   But both those cases were under a statute which
made the document conclusive evidence.   Per Bronson, J. in
*Bouchard* v. *Dias,* (3 *Denio,* 238, 242,) saying, " that recitals
never prove jurisdictional facts ; if so, inferior courts might
acquire jurisdiction by merely affirming the existence of the facts
on which it depends."   In that case an application was necessary
to be made, and as there was no proof of an application, the
court held there was no jurisdiction.   So in the case at bar, an
application by petition was necessary, and as there was no proof
of its having been made, there was no jurisdiction.   In *Sharpe*
v. *Johnson,* (4 *Hill,* 92, 96,) the same rule was enforced.   The
recital of a fact to prove the execution of a power of any descrip-
tion, is not even *prima facie* evidence of its existence.   (*Cowen
& Hill's Notes to Phil. Ev.* 1081, 1289, 1290, 1430, *and cases
there cited.   Sharpe* v. *Spier,* 4 *Hill,* 86.   *Striker* v. *Kelly,* 7
*Id.* 24, *and cases there cited.   Varick* v. *Tallman,* 2 *Barb.
S. C. Rep.* 113.   *Kennedy* v. *Newman,* 1 *Sandf. Sup. C. Rep.*
187.)   See also *Bennett* v. *Burch,* (2 *Denio,* 141, 147,) where

Beardsley, J. says, "That jurisdictional facts must be proved in the ordinary way ; and in no case can it be done by a mere recital, unless the legislature by law declare that such effect shall be given to a recital. The legislature may do it, but the common law knows nothing of that mode of proof." But if wrong in these views, still it is clear that where the record *omits* the allegation of any jurisdictional fact, it is not admissible for any purpose, without substantive proof of such fact. (*Gallatian* v. *Cunningham,* 8 *Cowen,* 361, 369, 370. *Benn* v. *Borst,* 5 *Wend.* 292.) In the case at bar the record omits the allegation of the following material facts : that the defendants' road was ever located from one *terminus* to the other. This was an essential averment, for no jury could be drawn till the entire road was located. This appears by the defendants' charter, § 9, which enacts that no person shall be drawn as a juror who resided in any town through which the road passed ; and unless there was a location the officer drawing the jury could not *know* from what towns to strike off jurors. Nor is it recited that when the petition was presented to the judge, or when the notice of drawing the jury was published, the road had been *located* over the lands of the plaintiff. There is therefore no notice to the plaintiff of the drawing of the jury, and he was therefore never legally made a party to the proceedings. It was by this location and notice, if at all, that jurisdiction was obtained ; and it should affirmatively appear that the statute was complied with. (*Corwin* v. *Merritt,* 3 *Barb. S. C. Rep.* 341, 344. *In the matter of Underwood,* 3 *Cowen,* 59.) It is not recited that there was *at the time of the application* to the judge any *disagreement as to the price* of the lands in question, between the plaintiff and the defendants ; nor that the plaintiff's lands were at *that time* necessary. The only allegation is at fol. 40, where the recital is in the present tense and the date of it is Dec. 11, 1847—when the jury was drawn months before. The very next allegation is in the past tense, and recites that the defendants " *did*" make application on a certain day, &c. Nor does the record recite that notice of the application by the defendants to the first judge, for the order transferring the proceedings to the county judge, was ever given

to the plaintiff. It is true the record recites that he was notified of the order after it was made. The statute (*Sess. L.* 1847, 343, § 76) only authorized the order to be made on notice; and without such notice the order made was a mere nullity; and the county judge had no jurisdiction. (*Case* v. *Thompson*, 6 *Wend.* 634. *Cowen & Hill*, 297, 998.) And it is not recited in the order that the defendants ever paid, deposited, or tendered the damages to the plaintiff. They could not enter on the plaintiff's lands till this was done; (*Charter*, § 9;) and if the statute does not bear that construction it would be void. (*Bloodgood* v. *Mohawk Co.* 18 *Wend.* 9.) The record contains no recital of that fact; all that it states is that: "Whereas due proof has been given" of such deposit, &c. This is no allegation of the deposit as a fact. It authorized the judge to make the record, but did not confer authority on the defendants to enter on the lands. (2.) The plaintiff should have been allowed to prove that its recitals were false. The foundation which supported the record would thereby be removed. The recitals being false, the proceedings were by an officer not having jurisdiction, and were therefore void. Jurisdiction is ably and briefly defined by Baldwin, J. in *The United States* v. *Arredondo*, (6 *Peters*, 709,) thus: "The power to hear and determine a cause is jurisdiction; it is *coram judice* whenever a case is presented which brings this power into action; if the petitioner states such a case in his petition, that on demurrer the court would render judgment in his favor, it is an undoubted case of jurisdiction." The plaintiff's offer, here, stripped the record of every pretense on which to found jurisdiction, as there was no "power to hear or determine." In *Harrington* v. *The People*, (6 *Barb.* 607,) Mr. Justice Paige says: "The jurisdiction of a court, whether of general or limited jurisdiction, *may* be inquired into, although the record of the judgment states facts giving it jurisdiction." (*See also Bowman* v. *Russ*, 6 *Cowen*, 234; *Dunning* v. *Corwin*, 11 *Wend.* 267; *Watson* v. *Spence*, 20 *Id.* 265; *Gallatian* v. *Cunningham*, 8 *Cowen*, 361, 370; *Striker* v. *Kelly*, 7 *Hill*, 9; *Seymour* v. *Judd*, 2 *Comst.* 464.) The cases proceed upon the broad principle, that nothing is to be intended in favor of the authority of infe-

rior courts, or officers executing summary powers, or a special authority, but that the party seeking to avail himself of their proceedings, must show affirmatively that there was full and complete jurisdiction. (*Cornell* v. *Barnes*, 7 *Hill*, 38, *in note*.) Such proceedings are liable to be attacked collaterally or otherwise, whenever set up, to found a right or sustain a defense. In the case under hearing, however, they are not attacked collaterally; but as was said by Savage, Ch. J. in *Adkins* v. *Brewer*, (3 *Cowen*, 206, 208 :) "The defendants are called on *directly*, not *collaterally*, to show why they have undertaken to dispose of the plaintiff's property. They must then show a lawful authority." That was an action of trespass for taking property on a justice's process—this is an ejectment to recover lands taken under a judge's process. It is a *direct* call for the authority of the defendants, and not *collateral*. The doctrine of *res judicata* has no application to the case under argument, to prevent the plaintiff from showing the falsity of this record. This subject is ably discussed by Mullett, J. in *Broadhead* v. *McConnell*, (3 *Barb. Sup. C. Rep.* 175, 189.) In that case, as in this, the party appeared and objected, and the officer overruled the objection, and it was sought to sustain the proceedings as *res judicata*, but the court held otherwise. In *Striker* v. *Kelly* the same fact appeared, (*see* 7 *Hill*, 11,) and no force was allowed to the fact. See to the same point, per Johnson, J. in *Prosser* v. *Secor*, (5 *Barb. S. C. Rep.* 607, 612 ;) per Spencer, Ch. J. in *Bigelow* v. *Stearns*, (19 *John.* 39, 41,) overruling, so far as it holds the doctrine claimed by the defendants, the case of *Mather* v. *Hood ;* also 2 *Phil. Ev.* 251 ; *Cable* v. *Cooper*, (15 *John.* 152, 157 ;) *Spalding* v. *The People*, (7 *Hill*, 301, 304 ;) *Walker* v. *Moseley*, (5 *Denio*, 102; ) *Cow. & Hill's Notes*, 800, 801 ; *Barber* v. *Winslow*, (12 *Wend.* 104 ;) *People* v. *Corlies*, (1 *Sandf. S. C. Rep.* 228, 247 ;) *Elliot* v. *Piersol*, (1 *Peters*, 328, 9 ;) *Ex parte Clapper*, (3 *Hill*, 450 ;) *Pearsall* v. *Com'rs, &c.* (17 *Wend.* 17.) The attempt of the defendants to engraft the doctrine of *res judicata* on proceedings of corporations in taking private property, has not even the merit of novelty. It has been repeatedly made, and as often denied ; and the reason is ably and

briefly given by Bronson, J. in *Sharp* v. *Speir*, (4 *Hill*, 76, 87 :) " There is little, if any thing of a judicial nature in the proceedings of corporations to take lands, either by way of assessments or for public use. It is the mere execution of a power." This doctrine should not apply, as the judge before whom these proceedings were pending, had no power to decide on the question whether the preliminary proceedings were valid, or whether the defendants had located their road before proceeding to take the lands. His power under the charter was merely ministerial. (*The President, &c.* v. *Patchen*, 8 *Wend.* 47.) From the nature and course of the proceedings on these assessments, it will be seen that the party could not avail himself of the same means of defense and redress, as are open to him in the present suit, and therefore the doctrine claimed ought not to apply. (1 *Greenl. Ev.* 630, § 524, 4*th ed.*) The plaintiff's appearance was no waiver. Consent can never confer jurisdiction ; and where there is no jurisdiction of the subject matter, no assent or submission of the parties will confer it. (*Per Walworth, chancellor, in Dakin* v. *Deming*, 6 *Paige*, 989.) In *Striker* v. *Kelly,* (*sup.*) the party had appeared and contested, and yet held no waiver. And so per Bronson, J. in *Matter of Faulkner*, (6 *Hill*, 598.) For further authorities that the record may be contradicted, see *Schneider* v. *McFarland*, (4 *Barb. S. C. Rep.* 144 ;) *Wheeler* v. *Townsend*, (3 *Wend.* 248;) *Ford* v. *Walsworth*, (15 *Id.* 449 ;) *Harrod* v. *Barretto*, (2 *Hall's N. Y. Rep* 302 ;) *Case* v. *Thompson,* (6 *Wend.* 634 ;) *Cowen & Hill's Notes*, 909, *and cases cited ; Smith* v. *Rice*, (11 *Mass. Rep.* 313.) The decree was made up on false allegations, for the purpose of giving the judge jurisdiction and enabling the defendants to obtain possession of the plaintiff's lands without title and without his consent. False suggestions in obtaining it will vitiate the decree or judgment of any court. (*Dutchess of Kingston's case, Amb. Doug.* 421. *Borden* v. *Fitch*, 15 *John.* 145. *Per Weston, J. in Harding* v. *Allen*, 9 *Greenl. R.* 140, 150. 1 *Phil. Ev.* 261. *Jackson* v. *Jackson*, 1 *John.* 424. *Morris Canal Co,* v. *Nathan*, 2 *Hall's N. Y. Rep.* 239. *Doe* v. *Martin*, 4 *T. R.* 39. *Fermor's case*, 3 *Co.* 77. *Thoroughgood's case*, 2 *Id.* 9. *Hart* v.

*Ten Eyck,* 2 *John. Ch.* 62.) There is a distinction between *Mather* v. *Hood,* with its kindred cases, and the case at bar, existing in the fact that the record was there interposed as a *shield* to protect judicial or ministerial officers from prosecution—but here it is sought to be used as a *sword,* to divest the owner of his estate without his consent. Several familiar instances of this distinction will be found in *Cornell* v. *Barnes,* (7 *Hill,* 36, *and note.*) (3.) But the court should at all events have allowed the plaintiff to prove that certain facts, not alledged in the record, and necessary to jurisdiction, had not occurred. (4.) The record was absolutely void on its face, because it did not show affirmatively that the power conferred by the statute to take the plaintiff's lands was *strictly pursued.* These proceedings are special and summary, and no appeal is given by the statute; they are under a statutory power in favor of a corporation and in derogation of common right; and such statutes are construed strictly, never equitably. (*Sprague* v. *Bidwell,* 2 *Cowen,* 419. *Sharpe* v. *Speir, supra. Van Winkle* v. *Railroad Company,* 2 *Green's N. J. Rep.* 162. *Rex* v. *Cook, Cowp.* 26. *Westervelt* v. *N. Y.* 2 *Hoff. Ch. Rep.*) And they are under a power whereby the title of the plaintiff is claimed to have been divested and transferred to the defendants, without his consent; and in such cases every requisite having the semblance of benefit to the owner must be strictly pursued, or the proceeding will be utterly void. (*Per Cowen, J. in Atkins* v. *Kinnan,* 20 *Wend.* 249. *Sharp* v. *Speir, and Sharp* v. *Johnson, supra. Plowd. Com.* 206. *Striker* v. *Kelly, and Varick* v. *Tallman, supra. Cowen & Hill's Notes,* 1289, *et seq.* 6 *Paige,* 554, *note a. Doughty* v. *Hope,* 3 *Denio,* 598; *S. C. in error,* 1 *Comst.* 79.) And the record of proceedings in such cases must show affirmatively that the statute has been fully complied with. (*Starr* v. *Trustees of Rochester,* 6 *Wend.* 563, 566. *Gilbert* v. *Columbiaville Turnp. Co.* 3 *John. Cas.* 107.) And when the record is deficient in an integral point, it may be treated as a nullity. (*Cowen & Hill's Notes,* 1012. *Also Ross* v. *McClung, per Marshall, Ch. J.* 6 *Peters,* 288.) Indeed all summary proceedings under special statutes must strictly follow the statute, and

it must appear affirmatively that they are regular. (*Rex* v. *Hullcott*, 6 *T. R.* 583. *Davison* v. *Gill*, 1 *East*, 64. *Grumon* v. *Raymond*, 1 *Conn. Rep.* 46. *Rex* v. *Halfshire*, 5 *T. R.* 341, 345. *Rex* v. *Arnold*, 3 *Burr.* 312. 1 *Saund. R.* 26, *note*. *Rex* v. *Yorke*, 5 *Burr.* 26, 84. *Powers* v. *The People*, 4 *John.* 292. *Rex* v. *Chilverscoton*, 8 *T. R.* 178. *Rex* v. *Judd*, 2 *Id.* 255. *Rex* v. *Brown*, 8 *Id.* 26. *Austin* v. *Donner*, 6 *Id.* 436. *Thatcher* v. *Powell*, 6 *Wheat.* 119, 127. *Per Whyte, J. in Earthman* v. *Jones*, 2 *Yerg.* 493. *Bradleston* v. *Sprague*, 6 *John.* 101, 103. 1 *Kent's Com.* 3d ed. 466, *note d.*) Thus where a statute required an offender to be brought before the *next* justice, it must appear by the commitment that this was done, or it will be void. (1 *Saund.* 263, *n.* 6, *and the cases there cited.*) So in *Hunt* v. *Hapgood*, (4 *Mass. R.* 117, 121,) Parsons, Ch. J. holds a judgment of a probate court void, because the record did not on its face show jurisdiction. (*See also Cowen & Hill's Notes*, 1013.) And wherever the proceedings are void whether on their face, or for want of jurisdiction, or for any other reason, they may be attacked directly or collaterally. (*Walker* v. *Moseley, and Spaulding* v. *The People, supra.*) "Lawless power is never so dangerous as when executed by public officers according to the forms of law. The remedy for such abuses ought to be direct and ample." (*Per Platt, J. in Suydam* v. *Keys*, 13 *John.* 446.) The law therefore allows a party at any time and whenever a question arises, to show that legal proceedings were without jurisdiction. As instances of this, see *Wise* v. *Withers*, (3 *Cranch*, 331;) *Crepps* v. *Durden*, (*Cowp.* 640;) *Sherman* v. *Ballou*, (8 *Cowen*, 304, 307 ;) *Welch* v. *Nash*, (8 *East*, 394.) The defendants' charter required that the judge should make a record of the proceedings containing "all the facts." The statute has thus prescribed the form of the decree, and if that form is not pursued, it is a nullity. (*Fitch* v. *Commissioners, &c.* 22 *Wend.* 132, 135. *Davison* v. *Gill*, 1 *East*, 64. *Goss* v. *Jackson*, 3 *Esp.* 198. *Cole's case, Sir Wm. Jones*, 170.) There is no room for any presumption to be indulged in favor of this decree, that any thing was done which is not specified; for the statute required that every thing which was done should

Adams *v.* Saratoga and Washington Railroad Co.

be stated, and it would be a neglect of duty in the officer to omit the statement of any portion of the proceedings. The record omits to state the contents of the petition made by the defendants to the judge. It should have been set out, that it might be seen whether it was as alledged; "in the manner required by said act." The presenting of the petition is alledged equivocally. It is that the defendants applied "by petition." In *Rex* v. *Oakley*, (4 *Barn. & Ad.* 307,) Denman, Ch. J. said: "it is not sufficient for justices to state that they found the detainer *unlawful.* They ought to have stated the facts which made it so." So the word *duly* rendered the act void in *Fitch* v. *Commissioners, &c. (supra.)* It should have been stated that it was in writing—its contents set out, and should have made out a case conferring jurisdiction on the judge, to issue the warrant. (*President, &c.* v. *Patchen,* 8 *Wend.* 47, 60. *Per Paige, senator, in Stone* v. *The Mayor, &c.* 25 *Id.* 172. *Gilbert* v. *Columbia Turnpike Co,* 3 *John. Cas.* 2d ed. 107, 541. *People* v. *Judges, &c.* 20 *Wend.* 186, 7.) The notice given by the sheriff was a nullity. It appears to have been directed to the "owners of land along and adjoining the line of the railroad as then located," &c. The plaintiff should have been named as owner; and it should appear that the road was then located on his lands. (*Per Bronson, J. in Sharp* v. *Speir,* 4 *Hill,* 90, 91.) The notice should have been set out, and the record is void for not setting it forth. (*Per Aston, J. in Rex* v. *Croke, Cowp.* 26, 30.) Nor does the record show a legal publication of the notice. That the whole proceedings were void for this reason, see *Muzzy* v. *Whitney,* (10 *John. Rep.* 226.) It is said the proceedings were transferred to the county judge by the first judge. But the order of transfer was void, as it was not made on notice, as required by the statute. No notice whatever is stated in the record to have been given to plaintiff of the time and place when the jury were to be impanneled, or when the damages would be assessed. (*Rex* v. *Croke, Cowp.* 26, 30. 3 *John. Cas.* 2d ed. 108, *and note a, and* 541. *Bernard* v. *Brewer,* 2 *Wash. C. C. R.* 76. 22 *Wend.* 135. 20 *Id.* 186. 4 *Hill,* 601. *Cowen*

*&. Hill's Notes*, 1024. *Rex* v. *Gaskin*, 8 *T. R.* 209.) (4.) The proceedings to obtain the plaintiff's lands were unconstitutional and of no force or validity. The provision in the charter authorizing the damages to be assessed *by a jury* was *ipso facto* repealed by the new constitution which ordained that: " When private property shall be taken for any public use the compensation to be made therefor, when not made by the state, shall be ascertained *by a jury*, OR by not less than *three commissioners*, appointed by a court of record *as shall be* prescribed by law." (*New Constitution, art.* 1, § 7.) This article went into operation on the first day of January, 1847, and the whole proceedings were subsequent to that time. Section nine of the defendants' charter, was expressly repealed by that clause of the constitution relative to existing laws, which ordains, that: " such of the said acts, *or parts thereof*, as are repugnant to this constitution, are hereby abrogated." (*Art.* 1, § 17.) The constitution required damages to be assessed in one of two ways, and the legislature were directed to choose which. The charter had previously enacted that damages should be assessed in only ONE way. The constitution and the charter were thus *inconsistent*, because the former opened the subject and authorized the legislature to select one of the two ways; such selection was " to be prescribed by law," and because the latter provided for only one thing, while the former provided for one of two things —there was evidently *two ways* by the former and only one by the latter. These provisions should be construed as if they stood in context, being in *pari materia*. (*Pennington* v. *Coxe*, 2 *Cranch*, 33. *Strode* v. *The Stafford Justices*, 1 *Brocken. R.* 162.) It would then read: " Private property shall not be taken for any public use without just compensation, to be ascertained by a jury, or by not less than three commissioners appointed by a court of record, as shall be prescribed by law." Thus the prohibition is *absolute*, except upon compliance with a certain condition, the performance of which requires the action of the legislature. It may be *difficult*, even *impossible* to comply with this condition—but such difficulty or impossibility does not in the least avoid the constitutional prohibition. (*Per*

*Bronson J. Sharp* v. *Johnson,* 4 *Hill,* 92, 99.) No necessity can be begotten which is to override the constitution and reduce its wise provisions against despotism to a nullity. Where a constitutional provision is positive, no legislative "sanction or formality" is requisite to enforce the enactment; such a provision carries its own sanction with it and is operative *per se;* as instances of this *vide art.* 1, §§ 14, 15. If formalities, or sanctions, or legislative acts are necessary as to the *mode* of compensation, *a fortiori* as to the *right* of taking private property at all. If any clause in that instrument needs a "sanction or formality," more than another, it is that which allows private property to be taken without the consent of the owner. The point we intend to raise is, that if legislation is necessary to enable the plaintiff to obtain compensation for his lands, then the defendants can not sustain their defense, for they had no right or authority to enter on his lands until they had made him compensation therefor. (*Bloodgood* v. *The M. and H. Railroad Company,* 18 *Wend.* 9. *Per Edwards, senator, at page* 27, *and per Maison senator, at p.* 33.) If the defendants could not enter on the plaintiff's lands till they had made him compensation, and legislation was necessary to enable them to make such compensation, and they actually entered without making it, then they have taken the lands of the plaintiff " without due process of law, and without compensation,"—and instead of violating only one provision of the constitution, they have violated two. In doing this they were clearly trespassers. The constitution grants the power to the legislature to prescribe by law the manner in which damages on taking lands for public purposes shall be appraised, whether by jury or by commissioners. This was a virtual repeal of all previous laws authorizing the assessment of damages in *any* manner. For the specification of *the manner* in which a thing shall be done, or of the *tribunal* by which it is to be done, virtually excludes all other ways of doing the act, and all other tribunals by which it could be done. (*The People* v. *Foote,* 19 *John. R.* 58.) The rule of construction in such cases is *expressum facit cessare tacitum.* (*Cates* v. *Knights,* 3 *Term*

*R.* 442; *Smith's Com.* 654.)   In the case at bar the constitution has specified two tribunals, one of which may be designated to assess damages, and directed the legislature to select which should perform the duty—*one of them* MUST be chosen—and a previous law which had appointed another tribunal for the same purpose is necessarily repealed.   "When a statute limits· a thing to be done in a particular form, it includes in itself a negative that it shall not be done otherwise." (*Plowd.* 206, *b.*) So affirmatives in statutes that introduce a new rule imply a negative of all that is not within the purview. (*Hob. Rep.* 298, *S. P.   Cohen* v. *Hoff,* 2 *Tred. R.* 661.)   (5.) The record of the proceedings whereby the plaintiff's land were taken, should not have been received in evidence without proof of the damages having been paid to the plaintiff.   It was no proof of title, till the damages were paid; and the objection was distinctly taken. The damages not having been paid or deposited, the defendants were mere trespassers. (*Thompson* v. *Grand Gulf Co.* 3 *How. R.* 240.   *The People* v. *Hillsdale Co.* 2 *John. R.* 190. *Messerole* v. *Brooklyn,* 8 *Paige* 198.   *Smith's Com. on Stat.* 486, *and cases there cited.*)   And where the validity of a deed or of any other transfer of property, depends on an act *in pais,* the party claiming under it is as much bound to prove *that,* as he would a matter of record. (*Jackson* v. *Esty,* 7 *Wend.* 149.   *Jackson* v. *Shepard,* 7 *Cowen,* 88, 90.   *Butler* v. *Palmer,* 1 *Hill,* 324. *Cowen & Hill's Notes,* 1289, *and cases there cited.*)

IV. Improper evidence was received and proper evidence rejected on the trial of the issues relative to plaintiff's farm, for which a new trial should be granted.   (1.) The petition, offered in evidence by the plaintiff should have been received.   Certainly the defendants ought to have known whether they owned the plaintiff's farm, and here under oath they say they did not.   It was a declaration of one in possession, in disparagement of his own title and therefore admissible.   (1 *Greenl. Ev.* 4th ed. 134, § 109.   *Id.* 631, § 527.   *Id.* 121, § 97.   *Jackson,* v. *Bard,* 4 *John.* 230.   *Jackson* v. *Dennison,* 4 *Wend.* 558.)   (2.) The certificate of deposit of the plaintiff's damages was also improperly received.   It was mere hearsay—entirely unofficial—and should

have been rejected. *Cowen & Hill's Notes,* 1047, 8. 1 *Stark. Ev.* 46. 1 *Greenl. Ev. 4th ed.* 162, 3, § 124.) For these reasons the nonsuit should be set aside and a new trial granted.

*Wm. L. F. Warren,* for the respondents. I. The offer to prove that Jeremiah Adams originally opened Church-street merely as a road for his own benefit, and that he always claimed to own the road and the fee thereof, and that such claim was open, public and notorious, was properly overruled. This street was laid out in 1806, and fenced, and was always afterwards used as a public street. After forty-four years of public use, the offer to show that it was opened as a private street was no answer to the presumption arising from public use. That he *claimed the fee* of the street required no proof. It was matter of law, and it was not pretended that the owner had by opening it as a street parted with the right to the soil. It was proved "that Church-street was laid out in 1806 by Jeremiah Adams and fenced immediately, and lots leased and sold, and buildings erected, and that it was mostly built up on both sides, and had been occupied ever since as a public street." The same facts were proved by a number of the plaintiff's witnesses and were undisputed. By opening the street and selling lots thereon, Jeremiah Adams was estopped from reclaiming the street. It was a public dedication, and ceased to be a private street, and his claiming the fee, or the private use, was immaterial and could not alter the legal effect of his dedication. The grantees who occupied and built on the side of the street were prima facie owners to the center. Nor were the mere declarations of Jeremiah Adams evidence, under any circumstances. Declarations of title are never admitted, except in favor of or against a party in possession, to define and characterize such possession. The offer here was simply to show a claim of title by a party out of possession. Besides, this was a question to be determined by *acts,* not *declarations.* It was one of dedication, which is established and controlled by actual use. The use can not be limited or extended in its effect by simple declarations. The opinion of the court, that ejectment would not lie to recover any part of Church-street

was correct.    This opinion is sustained fully by the case in 6 *Peters' Rep.* 432.  But the plaintiff insists that the statute regulating ejectment provides for the case in question. (2 *R. S.* 303 §§ 1, 2, 3.)   By statute the action is retained "in the cases and the manner heretofore accustomed," and no recovery can be had unless the plaintiff has a " valid subsisting interest," and right to recover.    This does not extend the action to any new cases. The first section makes the action subject to the provisions thereinafter contained, one of which is a writ of possession.  (Sec. 35.) This writ requires the sheriff to give possession : an actual *pedis possessio.*   How can he do this, when the public have the right of possession ?  So far from making this a new case, the statute and its provisions exclude it, by making it subject to a provision which is impossible to perform.   No actual possession of a highway by an individual can consist with the actual possession of the public.  (1 *Ch. Pl.* 188. 6 *Peters,* 432.)   It is not a case in which a writ of right would lie.   The plaintiff has no subsisting interest in the highway, of which he can avail himself.   He has parted with it to the public.   It is only contingent.   The verdict of the jury (by § 31,) regards only the possession, not the mere right of property.   By § 34, the judgment is that the plaintiff recover possession according to the verdict, and by § 35, the sheriff delivers possession.  How could the sheriff deliver possession of the premises according to the writ, except by the manual or physical delivery ; and how could this be consistent with the public right of way ?  But the plaintiff insists that he can recover judgment without recovering possession.    The law is not so inconsistent.  Of what use is a judgment without the power of enforcing it ? The statute is imperative, requiring the jury to give a verdict, on which a judgment is rendered and a writ of possession awarded.   The action in the 1st § of the statute, is given subject to all these contingencies.  If, however, the plaintiff's counsel is right in his construction of the statute, his conclusion is not helped.   The defendants assert no title to the fee, nor is there any evidence of occupation inconsistent with the plaintiff's claim.   The officers of the public, in the use of the streets as a public highway, could

have done all that the defendants have assumed to do. The use and improvement of a portion of the easement, have been, for the better accommodation of the public, exercised by the defendants, as the agents and officers of the public. That the streets have been excavated and partially enclosed with proper guards, is no infringement of the plaintiff's reversion. The use of a street for a railroad, either upon its natural surface, or by tunnelling, is not a misappropriation of it, provided such use does not interfere with the free and unobstructed use of it by the public as a highway for passage and re-passage. (*Plant v. The Long Island Railroad Co.* 3 *Amer. Law Jour.* 364. 9 *Leg. Obs.* 53 ; 10 *Barb.* 26, *S. C. Drake* v. *Hudson River Railroad Co.; 7 Barb.* 508.) But it is said the lands had ceased to be a highway, and had reverted to the owner. If this be true, any trespass or misapplication of a highway, by a disseisor, would work a forfeiture of land and use to the original owner. The public have not abandoned the use, nor can there be any discontinuance of a public highway, except by the action of the commissioners under the statute, or an adverse use for twenty years ; an encumbrance upon the easement, by the defendants or others, would not work a discontinuance. The case in 6 *East*, 154, was an action of trespass, for personal property severed by defendant from a bridge which had been built by the plaintiff, and dedicated to public use. And the court held that as the plaintiff had built the bridge of his own materials, these continued his property when unlawfully taken away by a wrongdoer, and a recovery was allowed. But the counsel says although the plaintiff was properly nonsuited as to that part of Church-street which was on the "Katonhill lot," it was not proper as to the one acre south of it, because he says Jeremiah Adams did not own this lot until twenty years after, and could not have dedicated it to the public. Church-street was laid out *as it now is,* and continued on a straight line through both of these lots, and had been used as a highway near half a century, and the same rule of law which would prevent a recovery in ejectment, for one part, would apply to the whole.

II. The plaintiff contends it was a question of dedication

which ought to have been left to the jury. This is not the
correct view. The action was ejectment to recover " Church-
street," which was proved to be a public highway for forty-four
years. This fact there was no dispute about, on either side.
In the course of the proof it appeared it was originally dedi-
cated for a street, and the plaintiff then insists it is a question
of dedication. In this he is mistaken; for although it might
have never been dedicated by Jeremiah Adams, yet the fact
that it has existed as a public highway for forty-four years is
surely enough to make it such, without any dedication at all.
But the answer to a claim for a recovery of the one acre south
of Katon hill lot is plain. (1.) All the proof on the subject of
the one acre is our admission, that after the commencement of
this suit we occupied a ticket office on the line of Church-street
south of the Katon hill lot. This is not an admission that we
occupied any part of the one acre lot, or that the ticket office was
on the one acre lot, or that we occupied it when the suit was
commenced. (2.) The plaintiff's dedication covers only the land
occupied by Church-street, and does not embrace the ticket
office. (3.) Our admission is that we occupied after suit
brought, and not previously, nor at the time the suit was com-
menced. (4.) The deed of the one acre is uncertain in de-
scription. It says on the west side of main highway (not
Church-street,) and could not include the ticket office, which
was on the east side. It is true Mr. Lamb, a witness, says
that it lies both sides of the street; but this contradicts the
deed, which locates it all on the west side of the road.

III. There was no proof that the plaintiff owned the fee of
Church-street, and he could not recover on that ground. The
proof is that the street, which was opened in 1806, was built
up on both sides and the lots leased or sold, and the grantees
in possession are to be deemed owners. (20 *Wend.* 96. 12
*Id:* 99.) The deed of the one acre gives the plaintiff no right
to the street extending south of Katon hill lot. The deed
locates the one acre west of the street. Besides, the deed of
Spicer & Hicks runs south 10°, 30′ west, whereas Church-
street runs due north and south, proving that the premises in

Adams v. Saratoga and Washington Railroad Co.

the deed do not cover the street. As to the two or three vacant lots spoken of by the witness, the proof is the witness don't know to whom they belong, don't know as the plaintiff owns any lots not on Church-street, has vacant lots not on the street. Plaintiff is not in possession of any lot on Church-street. So far as these lots are concerned, we have not interfered with them, or with the street in front of them; we are not in possession, and the ownership of the plaintiff is not clearly proved. Of course it gives him no prima facie right to the soil of the street. But if the plaintiff did own the soil in the street, we proved an occupation of it for a public road, for half a century, which is sufficient to establish an highway, without resorting to proof of dedication, and consequently there was no question of dedication to be submitted to the jury. The only question was, was Church-street a highway *in fact*. Under the proof it was so assumed, and the court decided that no recovery in ejectment could be sustained for a public highway.

IV. After the court had disposed of the case, so far as related to Church-street, the defendants resisted the recovery as to the residue of the land claimed in the declaration, being $\frac{29}{100}$ of an acre, situated on what was called the home farm of the plaintiff. The defendants claimed that this portion of the land had been taken by them for the purposes of their railroad, and had been duly appraised under the statute ; laws of 1834, p. 440, § 9. And the defendants introduced the decree of appraisement, to which the plaintiff objected, in various particulars. In answer to which the defendants say—

V. The recitals in the decree are conclusive evidence of the facts recited, except jurisdictional facts. (8 *Cowen*, 187. 8 *John*. 50. 3 *Wend*. 42.)

VI. The recitals in the decree, are prima facie evidence of jurisdictional facts, and when jurisdiction is shown the decree is conclusive. (*Cowen & Hill's Notes*, 1016. 12 *Wend*. 102. 11 *John*. 224. 3 *Wend*. 42. *See corporate act, Laws of 1834, p.* 440, § 9, *concluding part of section*.)

VII. The judge who made the decree was required by the 9th section of the law of 1834, before cited, to make an order

Adams *v.* Saratoga and Washington Railroad Co.

or decree particularly describing the land, and reciting the appraisement, and the mode of making it, *and all other facts necessary* to a compliance with this section. The judge was required to recite the facts contained in the decree, whether jurisdictional or otherwise, and in order to do so he was under the necessity of inquiring into and ascertaining those facts. It was a part of his judicial function, and having adjudicated those facts, they are conclusive. This was no doubt the intention of the legislature in making this requirement. It was designed that the facts should be presented and embodied in a tangible form, and recorded for future reference ; and the judge having thus adjudicated those facts, they are in their nature judicial, and can not be impeached collaterally. And hence the rule, when an inferior court is required to ascertain and settle by its decision a certain fact, such decision will conclude. He is bound to inquire as to the fact, and when he has inquired his record is conclusive. ( *Vide Cowen & Hill's Notes,* 1016, 1017, 1020, *and cases there cited* ; 12 *Wheat.* 19 ; 7 *Cowen,* 585, 606, 7, 8 ; 3 *Hill,* 460 ; 19 *Wend.* 65, *and cases there cited.*) And when the court is authorized to *record* the proceeding, as he was required to do in this case, and the record expressly shows jurisdiction, this is conclusive. In such case the power can not be questioned collaterally. (*Cowen & Hill's Notes,* 1019, 1020, 1021. 8 *John. Rep.* 46, 7. 12 *Pick.* 572, 582, 3.) By the same section of the statute it was the duty of the clerk of the county to record the same, thereby preserving it in the most solemn form, making it equivalent to a judgment deliberately adjudicated, and giving it the high character of a record.

VIII. But it is said by the counsel that the record omits material facts. He says : (1.) It is not recited that the defendants' road was ever located from one terminus to another. (2.) That it is not recited that when the petition was presented or the notice of drawing the jury given, the road had been located over the plaintiff's land. (3.) It is not recited that there was at the time of the application any disagreement as to price, nor that the plaintiff's lands were necessary. (4.) Nor that notice was given of the transfer of proceedings from Judge McLean

Adams *v.* Saratoga and Washington Railroad Co.

to Judge Lee. (5.) Nor that the defendants paid or deposited the damages awarded to the plaintiff. Now, as to the first and second objections, there is nothing in the statute of 1834 requiring a survey or location to be made or filed, although it was done, and the decree refers to it, as an existing fact, " *as* then located in the county of Washington," and again where it is recited that neither of the jurors resided in the town through which the railroad passed. Again it refers to owners along the line of road as then located. Again it refers to land of plaintiff along the line of road as then located in the town of Whitehall, and in describing the land of the plaintiff as located along the line of road in the town of Whitehall, and in the description of the land appraised the fact is again referred to. As to the third objection, it is recited in the decree " that the plaintiff and defendants disagree as to price," and also " that the lands are necessary." As to the fourth objection, it is recited in decree that notice of the transfer of proceedings was given. None of these objections are well founded in *fact.* But if they were, they are not jurisdictional, and the party appeared at the appraisement, on due notice, and should have then objected to the irregularity. Consent can not give jurisdiction, but cures every irregularity, as to want of notice or otherwise, not objected to at the time, and gives jurisdiction as to the person. (10 *Wend.* 174. 3 *John. Cas.* 108. 3 *Wend.* 45. 7 *Barb.* 506.) Besides, the record shows that the plaintiff not only appeared but *contested.* The proofs and allegations of the *parties* were given. Although there had been irregularities in the preliminary proceedings, and although the plaintiff might have appeared and objected, his subsequent *contest on the merits* was a waiver of the objections. Besides, these objections were not made at the circuit in the form now stated. Nor was it necessary to show actual disagreement as to price. This was waived by appearance on the appraisement, without objection. (7 *Barb.* 498, 505.) As to the fifth objection, all the statute required was that proof of depositing the damages to the credit of the plaintiff in bank, should be made to the judge in thirty days, which was done. The judge adjudicated the fact, and recites it

in the decree.   The evidence offered, of the certificate of deposit of the cashier was objected to.   But it was only cumulative evidence, and if objectionable, a new trial ought not to be granted on that account.

IX. The offer of the plaintiff to prove that the recitals in the decree were false, &c. was properly excluded.   The statute requiring the judge to adjudicate the facts and insert them in the decree, made the decree conclusive, except on certiorari to review it.   It could not be impeached collaterally.   Besides, the offer embraced a great variety of facts, and being all included in one, if any one was objectionable the whole were.   From the authorities above cited, (*Cowen & Hill's Notes*, 1014, *&c.*) it appears, the plaintiff could not disprove certain facts in the decree, which were not jurisdictional, but his offer embraces good and bad alike, and the court was right in rejecting the offer as a whole.   The answer embraced a large number of facts, some of which were immaterial or objectionable, and where such is the case the court may properly exclude the whole.   There was no attempt by the counsel of the plaintiff to prove a fact separately and distinctly brought to the mind of the court. But the matter would seem to be designed to embarrass the court and opposing counsel by offering the whole mass of facts constituting the defense in a way by which they could not be separately considered in the progress of the trial.

X. The offer to introduce the petition of the defendants, for the appointment of appraisers was properly rejected.   It was offered as a whole, and what part of it the plaintiff wished to use he did not state, nor for what purpose.   Moreover, it was a mere paper served on him as attorney in another proceeding, and was not authenticated in any way.   No proof was offered that the defendants authorized the petition.   It was not signed by them, nor was evidence proposed to show the employment of the attorney who served it.   It was a matter wholly collateral and immaterial.   The attorney was a mere agent, and his declarations could not be received to charge the principals.

XI. The proceedings on the part of the defendants to appraise the lands in question, were not unconstitutional.   It is insisted

Adams *v.* Washington and Saratoga Railroad Co.

that § 9, of Laws of 1834, p. 440, is repealed by the constitution, art. 1, sec. 7, which declares " When private property shall be taken for any public use, the compensation to be made therefor, when not made by the state, shall be ascertained by a jury or by not less than three commissioners appointed by a court of record, *as shall be prescribed by law*," and by § 17, " Such acts as are repugnant to the constitution, are hereby abrogated." The constitution went into effect on first January, 1847. The legislature did not prescribe by law the mode of assessing damages in such cases, until 27th March, 1848. (*See Laws* 1848, *ch.* 140, § 20.) The proceedings of the defendants to appraise the lands in question, commenced, as appears in the decree, on the 21st April, 1847. The appraisement was on 17th November, 1847, and the decree made in December, 1847.

It is submitted, that until the legislature has prescribed the new mode of assessing damages and thus carrying out the new provisions in the constitution, the old mode of assessment remained, and the defendants having commenced and completed their proceedings under the old statute, and consistently therewith, the objection now made can not prevail. This is the doctrine contained in 3 *Barb. S. C. Rep.* 332, and seems to be the reasonable doctrine. It is also confirmed in 15 *Peters,* 449. Section nine of the defendants' charter was not repugnant to the new constitution, until the legislature had acted, and altered the mode of assessment by a jury. It can not be deemed inconsistent with the constitutional provision, while it prescribes any of the modes directed by the constitution. It was in direct conformity with that instrument, and therefore was a subsisting law, until repealed by legislative enactments. Besides, it is submitted that this objection, not having been discussed or raised at the trial, nor appearing in the case, can not now be raised for the purpose of a new trial.

*By the Court,* WILLARD, P. J. The facts disclosed by the evidence, present a plain case of dedication for the purpose of a public street. The adjoining lots were laid out and sold with reference to that object ; and they have been improved by the

present owners, by the erection thereon of permanent and elegant buildings. It is now one of the most important streets in the village of Whitehall. A dedication thus made and acquiesced in, can not be revoked. And it is not competent for the party making it, to reassert any right over the land; at all events, so long as it remains in public use. (*In the matter of the Mayor of New-York, &c.* 2 *Wend.* 472. 1 *Id.* 262. · 8 *Id.* 85. 11 *Id.* 486. 6 *Peters, S. C. U. S.* 431, 498. 10 *Id.* 662. 4 *Paige,* 510. *Hunter* v. *The Trustees of Sandy Hill,* 6 *Hill,* 407. 2 *Greenleaf's Ev.* § 662.)

The taking possession of the street by the defendants, for the purpose of constructing a tunnel for their railroad, occasioned a temporary obstruction of the use of it by the public, but afforded no ground for the plaintiff to bring this action, even if the ultimate fee of the land was in him. By the terms of their charter, the defendants had a right to construct their road across or upon a street; but they were required to restore the street to its former state, or in a sufficient manner not to have impaired its usefulness. (*Laws of* 1834, *p.* 442, § 13.) They had a reasonable time within which to build their road and repair the street. To allow a street in a city or village to be used for a railroad track, either upon its natural surface, or by tunneling, is not a misappropriation of it, provided such use does not interfere with the free and unobstructed use of it by the public, as a highway for passage and repassage. (*Plant* v. *The Long Island Railroad Co.* 10 *Barb.* 26. *S. C.* 9 *N. Y. Legal Observer,* 53. *Hudson and Delaware Canal Co.* v. *The Erie Railroad Co.* 9 *Paige,* 323. *Hamilton* v. *New-York and Harlem Railroad Co. Id.* 171.) The same doctrine is asserted in *Drake* v. *Hudson River Railroad Co.* (7 *Barb.* 508.) It was not shown that the street will be destroyed or materially injured by the railroad and tunnel, after they shall have been completed. It is a matter of notoriety that railroads pass through all our greatest cities, and many of our villages, without essential injury to the right of passage by teams or persons. Individuals residing in the street must sustain a temporary inconvenience during the continuance of the work, but

for this, in the absence of negligence and unskillfulness, the defendants are not responsible. It is a case of *damnum absque injuria.* Much less, therefore, can the original proprietor, who does not reside in the street, resume the grant and revoke the dedication, for this cause.

An action of ejectment is a possessory action, and can be maintained only by the party who has a subsisting interest in the premises claimed, and a right to recover the same, or to recover the possession thereof, or of some share, interest or portion thereof. (2 *R. S.* 303, § 3.) The plaintiff has no such right, until he first shows, that the whole purpose has ceased for which the dedication was made, and the ultimate fee remains in him. This the plaintiff failed to show.

These observations are enough to dispose of the plaintiff's right to recover the premises covered by Church-street. But as the plaintiff's counsel has strenuously insisted that the fee of the road is not in the adjoining owners, and that ejectment is the proper remedy, some additional remarks will be made upon these points.

I. The most embarrassing question which arises in the discussion of the law of dedication, is as to the party in whom the fee of the soil is vested, to which the easement of a public way is attached. The technical language of the common law is so firmly rooted, that the idea of an estate in fee simple can not easily be separated from that of an owner. The fee must rest somewhere, or be in abeyance. Whether, when the owner of a tract of land lays it out into village lots intersected by streets, he continues the owner of the fee of the soil of the street, after having sold the adjoining lots in fee; or whether the fee in the street is transferred by a conclusive inference of law to the proprietors of the lots; or whether it is vested in the public, are questions of great practical importance, and on which a diversity of opinion has been entertained. In the city of New-York, the legal title to the soil of the streets is vested in the corporation. (*Drake* v. *The Hudson River Railroad,* 7 *Barb.* 508.) In the country, and other cities and towns, the legal presumption is that the fee is in the owner of the adjoining lots. This has

always been the law as understood and expounded by the courts of this state. (*See per Thompson, J. in Cortelyou* v. *Van Brundt*, 2 *John.* 363; *per Savage, Ch. J.* 1 *Wend.* 270, *and* 2 *Id.* 473; *per Walworth, Ch. in Livingston* v. *The Mayor of New-York*, 8 *Wend.* 106; *Wyman* v. *The Same*, 11 *Wend.* 486; *The Trustees of Watertown* v. *Cowen*, 4 *Paige*, 510, 513; *Gidney* v. *Earl*, 12 *Wend.* 98; *Hammond* v. *M'Lachlan*, 1 *Sandf. S. C. R.* 323; 2 *Kent's Com.* 433.) The case of *Jackson* v. *Hathaway*, (15 *John.* 447,) is not in conflict with the above cases. In the latter the highway was *expressly excluded* by the terms of the deed, as appears by the admissions of the eminent counsel by whom the cause was argued. The learned judge who delivered the opinion of the court remarks that *it was conceded on the argument, that the lands described in the deed did not include the space occupied by the road*. After such a concession it would be idle to pretend that the grantee took to the center of the road.

The boundary of land upon a stream above tide water, stands, at common law, upon the same footing as a boundary upon a highway. The supreme court held, in *Luce* v. *Carley*, (24 *Wend.* 451, 453,) that when the grant is so framed as to touch the water of the river, and the parties do not expressly except the river, one half of the bed of the stream, if it be above tide water, is included by construction of law. If the parties mean to exclude it, says Cowen, J. they should do so by express exception. No case in this state, holding a contrary doctrine, has been brought to our notice.

The adjudged cases in the neighboring states are, for the most part, in harmony with those of this state. (*Peck* v. *Smith*, 1 *Conn. Rep.* 103. *Chatham* v. *Brainard*, 11 *Id.* 60.) In *Chatham* v. *Pendleton*, (13 *Id.* 23,) the description in the deed brought the grantee to the highway, and it was held that he took to the center of the highway, although the highway was not mentioned as a boundary. In *Johnson* v. *Anderson*, (18 *Maine Rep.* 76,) a boundary on the highway was said to carry the grantee to the center of the road. The supreme court of Massachusetts, in *Lunt* v. *Holland*, (14 *Mass. Rep.* 149,)

held that land bounded by a river extends to the thread of the stream. But with respect to the boundary of a deed upon a road, a different rule seems to have been adopted in that state. (*Sibley* v. *Holden*, 10 *Pick.* 249. *Tyler* v. *Hammond*, 11 *Id.* 193. *Van Olinda* v. *Lathrop*, 21 *Id.* 292.) In the last mentioned case, Morton, J. concedes that there is a great analogy between a boundary upon a river, which he admits goes to the thread of the stream, and upon a highway; and yet he says that the cases in that state did not, in the latter case, carry the boundary to the center of the road. The case of *Sibley* v. *Holden*, and *Tyler* v. *Hammond*, (*supra*,) are believed to be opposed to the current of authorities in New England, as well as in this state and Pennsylvania. (*Chatham* v. *Brainard*, 11 *Conn. Rep.* 82. *Bucknam* v. *Bucknam*, 3 *Fairfield*, 463. *Leavitt* v. *Towle*, 8 *N. Hamp. Rep.* 96. *Hart* v. *Chalker*, 5 *Conn.* 311. *Ball* v. *Ball*, 2 *Am. L. J.* 499. *N. S. Hammon* v. *M'Lachlin*, 1 *Sandf. S. C. R.* 341. *Child* v. *Starr*, 4 *Hill*, 369. 2 *Smith's Lead. Cas.* 173 *and notes, and the cases before cited from New-York.*)

The same rule prevails in England. (*Dovaston* v. *Payn*, 2 *H. Bl.* 527.) This case is made the subject of an elaborate note in *Smith's Lead. Cas.* 2d *vol.* 173, to which the American editors have added a valuable review of the American cases. (*See also Sir John Lade* v. *Shepherd*, 2 *Str.* 1004.)

It results from the foregoing observations, that after the opening and dedication of Church-street in 1806, the fee to the road remained in the original owner until the adjoining lots were successively sold and conveyed; and then vested in each successive grantee of the lots to the center of the street, so far in length as his lot extended thereon, there being no words in the grants expressly excluding the street. (6 *Peters*, 436, 498.) But whether the dedication operated by vesting the title in the successive grantees of the lots bounded by the street, or by way of estoppel of the grantor, so long as the purpose of the dedication continues, the plaintiff is, in either case, destitute of any right to recover. (*See per Beardsley, J. in* 6 *Hill*, 452.)

II. If the fee of the road be in the plaintiff, and the defend-

ants, without granting compensation and without license, have laid the track of their railroad, and constructed their tunnel upon it, ejectment will not lie for the street, unless the occupation thereof by the defendants is *wholly inconsistent with the public easement*. The remedy of the plaintiff for his damages, is trespass. (*The Trustees of the Presbyterian Church* v. *Auburn and Rochester Railroad Co.* 3 *Hill*, 567.) The case of *Goodtitle* v. *Alker*, 1 *Burr*. 133,) is relied on to show that ejectment will lie by the owner of the soil, for land which is part of a public highway. That case was of a peculiar character. The person under whom the defendant claimed had encroached upon a public highway, running through the freehold of the ancestor of the lessor, by permanent erections, and it was then agreed by the parties that the party making such encroachment might occupy and enjoy the same at a certain rent, for one hundred years. A short time before the expiration of the term, the defendant erected another enclosure, embracing a few feet more of the soil of the said road, by a permanent erection, and the action was not brought until after the expiration of the said term of one hundred years. Here was an exclusive appropriation of the road by the defendant, which could not be used for passage or transit by any person, and in that respect, as well as in respect of the agreement, entirely differs from the present case. The use to which the railroad is to be applied, when completed, is not incompatible with the enjoyment of it by the public as a street. It can still be used by the inhabitants residing on it, and by all other persons, for all the purposes for which it was originally dedicated. Their enjoyment of light, air, prospect and social intercourse is not essentially impaired by any portion of the railroad, and in no respects by the tunnel. The business to be transacted by the railroad corresponds in its nature with that usually conducted by means of a public street. It is for the passage of persons and property, in a manner not anticipated by the age in which the common law had its birth. It is still a public street, notwithstanding the railroad. The superior facilities for locomotion which are created by the instrumentali-

Adams v. Saratoga and Washington Railroad Co.

ty of steam, afford no countenance to the present claim of the plaintiff.

The case of *Goodtitle* v. *Alker*, (*supra*,) has been incidentally approved in this state by judges, without examination, but has never been sanctioned in a case where it was the direct question. It has been disapproved, if not overruled, by the supreme court of the United States, in 6 *Peters*, 436, 498; 10 *Id.* 662. The present case differs, too, in its circumstances, so much from it, that the latter can scarcely be treated as an authority to support the present action. That case has been followed in some of the states. (*See* 2 *Smith's Leading Cases, Am. ed.* 183, 184, *where the cases are collected.*)

III. The plaintiff's claim for that part of Church-street, covered by the land purchased by Jeremiah Adams of John Williams, in January, 1823, rests on no better footing than that for the portion we have been considering. He owns no land adjoining the street. The occupants of the lots, therefore, must be presumed to hold to the center of the street.

IV. The residue of the plaintiff's claim was for the small part taken from the homestead. For this he was entitled to recover, unless the record of appraisal, introduced on the part of the defendants, afforded prima facie evidence that all the steps had been taken to vest the title in the defendants, required by the ninth section of their charter. (*Laws of* 1834, *p.* 440.) The objections to the introduction of the record, have been so fully treated by Judge Cady in his able opinion on this subject, that I will merely add a few words. The plaintiff did not offer to disprove specifically, any one of the jurisdictional facts recited in the record. The record was at least *prima facie* evidence of the jurisdictional facts ; and conclusive evidence of every other fact required to be and actually recited in it. (*The People* v. *Harrington*, 6 *Barb.* 607.) This court decided at the September term, 1850, in the case of *Polly* v. *The Saratoga & Washington Railroad Company*,(*a*) that a decree precisely similar to the present, afforded a complete bar to an action.

(*a*) 9 *Barb.* 449.

The question in that case arose on demurrer to a plea, which set up the record as conferring the authority for the defendants to enter on the plaintiff's land. That case is directly in point. The cases which go to prove that a record made in pursuance of a statute, and which is directed to be recorded as a muniment of title, is conclusive evidence of every fact recited in it, after jurisdiction has been shown, and is prima facie evidence of the jurisdictional facts, are, among others, the following. (*Gray* v. *Cookin,* 16 *East,* 13. *Cowen & Hill's Notes,* 1014, 1016, &c. *Burnett* v. *Burch,* 1 *Denio,* 141. *Jenkins* v. *Stebbins,* 11 *John.* 224. *Barber* v. *Winslow,* 12 *Wend.* 102. *Moody* v. *Thurston,* 1 *Str.* 481. *Steenburgh* v. *Bigelow,* 3 *Wend.* 42. *Bouchard* v. *Dias,* 3 *Denio,* 242. *Harrington* v. *The People,* 6 *Barb.* 610.)

There is some apparent conflict in the decisions, both in this state and in England, but they have probably arisen from not discriminating between the effect of the record, when it comes up collaterally, and when the proceeding is by certiorari to reverse it. In some of the cases a question of pleading has been confounded with a question of evidence; and in others the distinction between its effect when used to protect the officer by whom it is made up, and its effect upon the rights of parties claiming under it, has not been sufficiently noticed. It is conceded in all the New-York cases, that the legislature may give to such recitals the form of conclusive evidence. (*Bennett* v. *Burch,* 1 *Denio,* 141.) They have done so in relation to insolvent discharges, in express terms. (1 *R. L.* 464, § 8. *Jenkins* v. *Stebbins,* 11 *John.* 224. *Barber* v. *Winslow,* 12 *Wend.* 102. *Frary* v. *Dakin,* 7 *John.* 75. *Service* v. *Hermance,* 1 *Id.* 91.) Full effect can not be given to the 9th section of the defendants' charter, unless the record required to be made up, is at least prima facie evidence of all the facts recited in it. Why was the judge required to recite in the record all the facts necessary to a compliance with the ninth section of the act; and why was it required to be recorded, unless it was evidence of the facts there recited?

---

We think the decision at the circuit was correct, and that the motion to set aside the nonsuit, and for a new trial, should be denied.

[ESSEX GENERAL TERM, July 7, 1851. *Willard, Hand and Cady,* Justices.]

