## VAN STEENBERGH *vs*. BIGELOW.

Under the      THIS was an action of *trespass*, tried at the Ulster circuit,
"*act relative to* in April, 1828, before the Hon JAMES EMOTT, one of the cir-
*turnpike com-*
*panies*," two cuit judges.
only of the ap-      The action was brought for the recovery of damages for
praisers    ap-
pointed to as- the taking and appropriating of lands of the plaintiff for the
sess to the da- use of the Bristol Turnpike Company, the defendant acting
mages of the
owners of land as the agent of the company ; the plaintiff insisting that the
over which the company had not entitled themselves, by complying with 'the
road  is  laid,
have power to requirements of the statute relative to turnpike companies,
perform    the
duties specified (1 R. L. 230,) to take and appropriate his land.
by the act; and      The declaration contained the common count for trespass
it is not neces-
sary that  all *quare clausum fregit*, and also a count for trespass *de bonis*
should  meet, *asportatis*.  The defendant pleaded the general issue, and a
view  the  pre-
mises,      and special plea of justification under an act of the legislature in-
make inquiry. corporating the Bristol Turnpike Company.  The plaintiff
    An inquisi-
tion made by replied *de injuria sua propria*.
appraisers, un-      The plaintiff proved, that by the direction of the defendant,
der this act, is
*conclusive* as to a turnpike road was made and constructed over his land, and
the facts stat-
ed in it relating shewed damage to a considerable amount.
to  their  own
proceeding ; and if enough appears, shewing they had jurisdiction of the subject matter, the
court will not collaterally,  in action of tresspass wherein it is alleged that the proceedings of
the appraisers are irregular,  inquire into the regularity of such proceedings ; the party must
seek his remedy by *certorari*.
    Nor in such action is evidence admissible, that one of the appraisers has not the qualifica-
tion required by the act, to wit, the he is a freeholder.  Such error, if any, must also be cor-
rected by *certiorari*.
    The second section of the act, "for the more easy pleading in certain suits," allows any
matter to be given in evidence, which, if specially pleaded, would be a defence to the action ;
but not matter which would be no defence, though specially pleaded.

The defendant read in evidence the act of the legislature set forth in his plea; the appointment of commissioners to lay out the road; a map of the road made under their direction; the appointment of inspectors; and a licence to erect a turnpike gate. He also read in evidence an appointment by the first judge of Ulster county, of William Pine, Theron Skeel and James G. Wilson, as appraisers, and an inquisition by Pine and Wilson, two of the appraisers, (with their oaths annexed,) of the assessment of damages to the owners of lands taken and appropriated for the road: from which it appeared that the sum of $75 was assessed to the plaintiff. The inquisition stated the appointment of the appraisers, the taking by them of the oath prescribed by the statute, the view by them of the premises, and that having ascertained the damages, they make on inquisition, " under the hands and seals of us, two of the said appraisers." The defendant then proved, that previous to the opening of the road, the sum assessed to the plaintiff was tendered to him by the secretary of the company.

The plaintiff insisted that the inquisition was void, because only two of the appraisers had acted in the premises. The presiding judge expressed his opinion that the evidence given by the defendant constituted a defence to the action; that the objection to the regularity of proceedings, if well founded upon a direct proceeding to try their validity, could not then be urged; but, at the request of the plaintiff, he reserved the point for the opinion of this court. The plaintiff then offered to prove that Wilson, one of the acting appraisers, was not a freeholder at the time of his appointment; which evidence the judge refused to receive. Whereupon, under the point reserved, the plaintiff submitted to a nonsuit, with leave to move this court to set it aside.

*Romeyn & Sudam*, for plaintiff. The inquisition was irregular and void, only *two* of the three appraisers nominated having *acted* in the premises. *Each* of the appraisers should have acted. The statute relative to turnpike companies, (1 R. L. 230, § 3,) prescribes that *each* of them shall, before he proceeds to execute the trusts reposed in him, take and

UTICA,           subscribe an oath, &c.; and then directs that the said ap-
August, 1829.    praisers shall proceed to view the premises, &c.   It was not
V. Steenbergh    shewn, on the trial, that the third appraiser was sworn; that
v.               he took any part in, or even had notice of the proceedings.
Bigelow.         Admitting that a majority of the appraisers, when assembled,
might have overruled the third, and that the finding of two
would have been a compliance with the statute, it not hav-
ing been shewn that the third appraiser took any part in the
proceedings, the inquisition ought to be adjudged void. (1
Bos. & Pul. 226.  6 Johns. R. 39.   1 Johns. Cas. 334.   1
Cowen, 238.   7 Cowen, 526.   2 Bos. & Pul. 35.   3 Caines,
180.   8 Johns. R. 54.)

The validity of the inquisition was inquirable into in this
action.   (19 Johns. R. 39.   15 id. 152.   4 Cowen, 196,   2
Wils. 382.   Cowp. 640.   16 Johns. R. 8.   8 T. R. 424.   13
Johns. R. 424.   1 H. Black. 68.   1 Starkie's Ev. 226, n. 1.
2 Phil. Ev. 251.)   And it was competent for the plaintiff to
shew that one of the appraisers had not the qualifications
prescribed by the statute, (4 Cowen, 190.  7 Cowen, 530, n. a.)

The statute for the more easy pleading in certain suits, in
cases like this, permits "the whole matter to be given in ev-
idence" under general pleadings.   (1 R. L. 155, § 2.)

*C. H. Ruggles*, for defendant.   The inquisition of the ap-
praisers, being a judicial proceeding, is *prima facie* evidence
at least of the facts contained in it.   It sets forth the ap-
pointment of *three* appraisers: that they took and subscribed
the oath required; that they proceeded to view the premi-
ses; and that having ascertained the damages, &c. they make
an inquisition under the hands and seals of two of them.   It
is not denied that the facts stated in the inquisition might
have been controverted; but that was not attempted at the
trial.   The plaintiff assumes that the third appraiser was not
sworn; the inquisition avers the contrary.   (16 East, 20.
8 Johns. R. 50.   19 id. 39.)

But if it may be inferred that but two of the appraisers
acted in the premises, it is insisted that it was not necessary,
under the provisions of this statute, that all should join.   The
act authorises *the appraisers, or any two of them,* to name a

day for meeting on the land, and perform the duties requir- ed of them. The subsequent provision, requiring the ap- praisers to be sworn, is satisfied by those taking the oath who do act. The phraseology of this statute is different from those under which the adjudications have been had, cited by the other side.

Allowing the proceedings to be subject to reversal on cer- tiorari, still, being regular on their face, all persons acting under them, until reversal, are protected by them. (7 Johns. R. 549.) If the defendant is a trespasser, every person trav- elling the road is a trespasser. The fact of the appraiser not being a freeholder, could not be shewn in the manner attempted; it could only be inquired of by certiorari issued to the officer making the appointment. The acts of officers *de- facto* are valid as respects the public and the rights of third persons. (9 Johns. R. 135.) The remedy afforded by a cer- tiorari here, not obtained by that writ in England, furnishes a substantial reason, which does not exist there, why a judi- cial proceeding like that under consideration, should not be inquired into collaterally. In England the certiorari goes only to the form of the record, or the fact stated in it, (2 Salk. 492;) here not only the record, but the whole facts of the case are returned, and the court pronounced the law—as in the case of a *certiorari* to a court of sessions to remove an order under the poor act, (2 Cowen, 575,) or the bastardy act, (3 Johns. R. 23, 26.) So, to remove the proceedings relative to an adjudication under the highway act, (1 Cowen, 23,) or the statute of 1820, relate to landlords and tenants. Our courts look beyond the record, and if they find a radi- cal defect in the proceedings, or discover a mistake of the law, they reverse. This adaptation of the writ of certiorari, rendering it so much more beneficial, should have an influ- ence on these questions when arising collaterally.

*By the Court,* SAVAGE, Ch. J. By the third section of the act relative to turnpike companies, (1 R. L. 230,) all turnpike roads are to be laid out by commissioners to be appointed by

VOL. III. 6

*Margin:* UTICA, August, 1829.

v. Steenbergh
v.
Bigelow.

UTICA,
August, 1829.

V. Steenbergh
v.
Bigelow.

the governor. The president and directors of the company may agree with the owners of the land over which the road is laid, as to compensation for the same. If they cannot agree, application must be made to one of the judges of the court of common pleas of the county where such land is situated, whose duty it is to appoint three appraisers, being freeholders of the county. The act then proceeds: "And it shall be the duty of the said president and directors to give notice to the said appraisers of their appointment, who, or any two of them, shall thereupon name a day for meeting on the land, and perform the duties required by this act," &c. The president and directors are also to give notice to the owner of the time and place of the meeting of the appraisers. "And further, each of the said appraisers shall, before he proceeds to execute the trusts reposed in him by this act, take and subscribe an oath or affirmation in writing," &c. The appraisers shall make an appraisal, and upon payment of the amount, the company may enter upon the lands.

The judge was certainly right in rejecting the proof that one of the appraisers was not a freeholder. Whether the appraisers were freeholders or not, was not enquirable into collaterally. Their appointment had been made by an officer whose duty it was to have appointed freeholders and no other. If he erred in that particular, the appointment might have been examined in this court on certiorari, and if illegally made, would have been set aside. The statute, (1 R. L. 155,) which, in certain actions, allows the whole matter to be given in evidence on general pleadings, cannot be construed to mean that any matter whatsoever may be given in evidence. The object of the statute was only to relieve parties from intricate special pleading, and not to allow matter to be given in evidence, which, if specially pleaded, would not be a defence.

The whole defence rests upon the construction to be given to the third section of the act relative to turnpike companies. The general principle is too well established to be controverted, that where three or more persons are appointed to do any

particular act, if it be a matter of private concern, and no provision is made that a less number than the whole shall act conclusively, then all must join; but in matters of public concern, a majority have power to *decide*, provided all *act* upon the matter. Thus commissioners of highways must all unite in consultation, but a majority may decide. So, a majority of referees may make a report, provided all have heard the cause. But in neither of these cases have two a right to act alone, without the third, though they may ovrrule him. The same rule has been applied to canal appraisers, and is applicable to this case, unless the statute has excluded it. The statute directs that the president and directors shall give notice to the appraisers of their appointment, *who or any two of them, shall thereupon name a day for meeting on the land and perform the duties required of them.* Had the words " *or any two of them*," been omitted, it would have been necessary to have shewn that all the appraisers met and consulted together ; but two of them in that case might have made a valid appraisement, although the third had expressly dissented. (7 Cowen, 526.) The legislature, I presume intended by the phraseology " *or any two of them*," to confer upon the majority the powers which, in ordinary cases, would have devolved upon the whole, without those words. This seems to me the true construction of the act. *Any two of the appraisers* most clearly may name a day of meeting on the land; and, as I read the statute, *any two of them shall perform the duties required of them by this act.*

The inquisition made by the two appraisers must be taken as conclusive, certainly so far as it states their own proceedings. It states the appointment by the judge, which was not necessary to have been stated. It does not state a notice to the apprisers, but it states that the appraisers, on the day of their appointment, named a day for meeting on the land. Notice, therefore, may well be presumed, particularly as the object of the notice was accomplished by bringing together the appraisers, and procuring the designation of a day for meeting upon the land. The inquisition speaks of the appraisers

UTICA,
August, 1829.

Allegany co.
v.
Van Campen.

throughout as if all were present; though it appears that but two took the oath required before proceeding to execute the trust. It seems to me that two had authority expressly given them by the act to perform the duties designated.

By the inquisition, the proceedings appear to have been regular; but if they were not, so long as a valid appraisement appears, we will not enquire collaterally into the proceedings of the appraisers. Enough is shewn to give them jurisdiction. The inquisition is on file, and a matter of record. If incorrect, it might have been set aside on certiorari.

I am of opinion, therefore, that the motion to set aside the nonsuit should be denied.