COMSTOCK *v.* CRAWFORD.

1. The recital in the record of proceeding of a Probate Court, under a statute of Wisconsin Territory, of facts necessary to give such court jurisdiction, is *primâ facie* evidence of the facts recited.

2. The jurisdiction existing, the subsequent action of the court is the exercise of its judicial authority, and can only be questioned on appeal; the mode provided by the law of the Territory for review of the determinations of the court.

Where a statute of the Territory provided that the real estate of the decedent might be sold to satisfy his just debts when the personalty was insufficient, and authorized the Probate Court of the county where the deceased last dwelt, or in which the real estate was situated, to license the administrator to make the sale upon representation of this insufficiency, and "on the same being made to appear" to the court, and required the court, previously to passing upon the representation, to order notice to be given to all parties concerned, or their guardians, who did not signify their assent to the sale, to show cause why the license should not be granted.

*Held*, that the representation of the insufficiency of the personal property of the deceased to pay his just debts was the only act required to call into exercise the power of the court. The necessity and propriety of the sale solicited, were matters to be considered at the hearing upon the order to show cause. A license following such hearing involved an adjudication upon these points, and such adjudication was conclusive.

3. Where an administrator had.been appointed, and after giving the required bonds informed the court that he was unable to act, and resigned the appointment, not having taken possession of the property of the intestate, or attempted to exercise any control over it, it was competent for the court to accept the resignation, and to appoint a new administrator. The power to accept the resignation and to make the second appointment, under these circumstances, were incidents of the power to make the first.

4. A second license to an administrator to sell property already sold by him,

and a second purchase of it by the same party who had already bought it before, is not evidence of fraud in the first sale.

5. The title of a purchaser at an administrator's sale is not affected by the fact that the proceeds of the sale exceeded the amount of the alleged debts of the decedent, for the payment of which such sale was ordered.

A STATUTE of Wisconsin Territory ordained that there should be appointed by the Governor, in and for each county, a person to be known as "the public administrator" thereof; and when any person shall die intestate, leaving personal property within the Territory, but leaving no widow, next of kin, or creditor living therein, "administration"—the statute went on to say—"*shall* be granted" to the "public administrator" of the county in which the intestate died, or, if the decedent have been a non-resident, of the county in which the estate may be found. The statute further ordained, that when administration shall have been granted to any public administrator, and it shall afterwards appear that there is a widow, next of kin, &c., the judge of probate shall—on application to do so made within six months after such grant—revoke the letters granted to the public administrator and grant them to such widow, next of kin, &c., according to law.

In force in the same Territory, along with this statute, was another, distinct and independent of it, providing, much as others do in different States, for the sale, under order of the county Probate Court, of the real estate of decedents, to pay debts when personalty left is insufficient to do so. It enacted that when the personalty should not be sufficient for this purpose, " upon representation, and the same being made to appear to the District or Probate Court of the county where the deceased person last dwelt, or in the county in which the real estate lies," the said court might license the administrator to make sale of all or any part of the realty, " *so far* as shall be necessary to satisfy the just debts." " The said court," the act proceeded to say, " previous to passing on any petition or representation for the sale, shall order due notice to be given to all parties concerned, or their guardians, who do not signify their assent to such sale, to show cause,

at a time and place appointed, why such license shall not be granted."

With these acts in force in *Wisconsin*, and owning personalty in Iowa County and realty in Grant County, *of that Territory*, one Comstock died in *Illinois*, having been, before and at his death, domiciled *there*. His brother was appointed, soon after, administrator, by the Probate Court of Iowa County, in Wisconsin; but he never took possession of the property of the estate, nor attempted to exercise ownership over it; and in a short time after his appointment sent word to the probate judge that he was unable to attend to the duties of the administration, and requested that officer to appoint another kinsman of the decedent, one Ripley, of Illinois, to the place. A formal resignation sent afterwards was accepted, and Ripley appointed; *nothing, however, in all the matter of the estate, appearing about the "public administrator."*

A few·years afterwards, Ripley, acting under the letters granted to him in Wisconsin, applied to the Probate Court of Grant County, in that Territory, for license to sell *"so much"* of the real estate of the deceased in the county as would "enable him to pay the sum of $8000," together with the costs and charges attending the sale.

The record of the proceeding—and this is material—stated the fact that written application for the sale had been made. It set forth the application at length, representing that the personal property of the deceased was insufficient to pay his just debts by the sum of about $8000. It gave the order directing publication of notice of the application; it recited that due notice had been given; it contained (by way only, however, of incorporation or interposition in it) a certificate of a probate justice of Illinois (in which State it appeared that administration of Comstock's effects had also been had), that the personal property of the deceased had been exhausted in payment of his debts, and that there remained debts unpaid to the amount named. "And it *being made to appear*," the record went on to say, "that it is *necessary and proper* that the said administrator should be licensed" to

make sale of the real estate, *or so much* as will enable him to pay the sum of $8000, "*due proof of the existence and amount of said debts being made*" to the court, and no person appearing to make objection, the court adjudged and decreed that "the said administrator be licensed, authorized, and empowered to sell *so much*, &c., as may enable him to pay the sum of $8000, the *debts due and owing from said estate*, together with the costs and charges attending the sale," &c.

Ripley made the sale, the purchaser being a certain Crawford, defendant here and below; and he having received the administrator's deed and entered into possession, the heirs of Comstock now brought ejectment against him in the Circuit Court of Wisconsin, to get back the land. On the trial the defendant produced and gave in evidence, under objection, the record of the Probate Court of Iowa County, containing the letters of administration, resignation, &c., and also the record of the Probate Court of Grant County, above stated, and closed.

After the defendant had thus closed, the plaintiff, for the *purpose of proving collusion and fraud* between the administrator and the purchaser, offered the record of a license to the administrator to sell the *same* premises, subsequent in date to the one above mentioned. The plaintiff offered, also, to prove that the administrator had made sales to the extent of $10,000, while his license to sell was to the extent of but $8000. But both offers were refused by the court.

The admission of the letters, resignation, and records of the Probate Court, and these two refusals, were the matters considered on writ of error here. The record did *not* show, however, that the representation, which was the preliminary step in the proceeding for the sale, gave the amount and description of the personal property of the deceased, or a statement of the just debts which he owed. Neither, independently of the certificate of the probate judge of Illinois, did the order for the sale show—otherwise than as was to be inferred from the recital, just above quoted, of its being "made to appear that it was *necessary and proper* that the said administrator should be licensed to make sale of the

real estate"—that the personal property of the estate was insufficient to pay the debts.

The defendant had judgment, and the plaintiffs brought the case here on error.

*Messrs. Buttrick, Hill, and J. S. Brown, for the heirs, plaintiffs in error.*

I. The appointment of a general administrator for the estate of a non-resident intestate, was extra-judicial and void under the statute. The administration belonged to "the public administrator" by its imperative terms. The appointment of that officer was not given to the court. The governor was to make it, and of course had made it. The public administrator—*executor a lege constitutus*—like an *executor a testatore constitutus,* was ever present, ready to receive the administration, to perform his duties prescribed by law, to execute and carry out the process, the orders, decrees, and sentences of his court. Yet he is never heard of in the case, no more than if neither he nor the case had ever existed. *Griffith* v. *Frazier,*\* in this court, temp. Marshall, is in point. The syllabus of the case is thus given by Cranch:

"So long as a qualified executor is capable of exercising the authority with which he is invested by the testator, that authority cannot be conferred either with or without limitation by the court of ordinary or any other person. And if during such capability of the executor the ordinary grant administration either absolute or temporary to another person, that grant is absolutely void."

II. If the appointment of the first administrator was valid, the appointment of the second was void. Unless enabled by statute, administrators cannot resign. This is the law of Wisconsin as held in *Sitzman* v. *Paquette.*†

III. The record of the Probate Court of Grant County does not support the license to sell.

---

\* 8 Cranch, 9; and see Warner *v.* People, 2 Denio, 272; People *v.* White, 24 Wendell, 539–541; 1 J. J. Marshall, 205, 206; Reynolds *v.* Orvis, 7 Cowen, 269.

† 13 Wisconsin, 293.

1. The representation to the court does not give the amount and description of the goods and chattels of the deceased, nor a statement of the *just debts which he owed.* These were essential facts which were to be shown to the court before it could act.

2. The order for the sale does not show the insufficiency of the personal property. This is the main point in our case. The order shows that Ripley filed a certificate, and that it appeared to the court that it was necessary and proper that a license should issue, and that due proof of the existence and the amount of the debt was made, but the all-important fact *that the goods and chattels belonging to the estate were insufficient to pay them* nowhere appears, unless we resort to the contents of the certificate of the probate justice of *Illinois.* Obviously, there was nothing but this before the court relative to debts, personalty, or anything else. The Probate Court of *Wisconsin* avoids the responsibility of declaring that *it* had evidence or was satisfied that the debt exceeded the personalty. The record of this Wisconsin court interposits in an anomalous way—a way which shows that *it* knew nothing on the subject—a certificate from a person in another State. Certainly under the statute this can make no foundation for the license, or for the order preliminary thereto.

Had the Probate Court of *Grant County* inquired into and determined the existence of the fact, then the defendant in error might perhaps claim immunity under *Grignon's Lessee* v. *Astor.*[*] But this case has no application. There the record was perfect and complete. In the language of the court it was absolute verity. There an adjudication had been made, the necessity of the sale established, and to meet it specific real property was designated. The judgment was *in rem* and of itself operated to divest the title of the heirs; after decree it remained for the ministerial officer to perform it.

If it be argued that because the fact is *recited* in the license, it is conclusive, our answer is that *Sibly* v. *Waffle,*[†] in the

---

* 2 Howard, 819.                    † 16 New York, 180.

New York Court of Appeals, is in point to the contrary. In that case " an order of sale *recited* that it was made upon proof of due publication of the order to show cause." But what says the syllabus? " Such *recital* is no more than a statement by the surrogate that he had acquired jurisdiction, and is of no effect; not showing an adjudication that he found from the evidence, the *facts* upon which his jurisdiction depended."

IV. There was a distinct offer on the part of the plaintiff to show collusion and fraud between Ripley and the defendant. The second license *tended* to do so. Its effect was for the jury, and it ought to have been received.

V. But at best the power to sell was but for $8000, and we have an actual sale for $10,000. It might as well have been for $15,000 or for $20,000. This business of selling the real estate of infant children—the best and often the only dependence they have—is a matter which invites to carelessness and fraud, and which, unless narrowly watched, involves in ruin a class who, from their tender years, claim peculiar care from courts of justice. The order should surely have been interpreted with strictness. " That no individual or public officer can sell and convey a good title to the land of another, is one of those self-evident propositions," says Marshall, C. J.,* " to which the mind assents without hesitation, and that the person invested with such a power must pursue with precision the course prescribed by law or his act is invalid, is a principle which has been repeatedly recognized by the court." This declaration of judicial wisdom from as great a magistrate as ever sat in judgment, applies to much of this case. It applies specially to the mode in which the order to sell was executed.

*Mr. Laken, contra, for the purchaser.*

Mr. Justice FIELD delivered the opinion of the court.

It is only necessary to examine the objections taken to the appointment of the first administrator, and the subse-

---

* Thatcher *v.* Powell, 6 Wheaton, 125.

quent acceptance of his resignation, so far as they affect the jurisdiction of the Probate Court. It is well settled that when the jurisdiction of a court of limited and special authority appears upon the face of its proceedings, its action cannot be collaterally attacked for mere error or irregularity. The jurisdiction appearing, the same presumption of law arises that it was rightly exercised as prevails with reference to the action of a court of superior and general authority.

By the statute of Wisconsin, under which the administrator was appointed, the only facts necessary to give the Probate Court jurisdiction were the death of the non-resident intestate and the possession by him, at the time, of personal property within the Territory. Both of these facts are recited in the record of the proceedings produced by the defendant, which sets forth the letters of administration at large. These recitals are *primâ facie* evidence of the facts recited.* They show the jurisdiction of the court over the subject. What followed was done in the exercise of its judicial authority, and could only be questioned on appeal, the mode provided by the law of the Territory for review of the determinations of the court. Whether there was a widow of the deceased, or any next of kin, or creditor, who was a proper person to receive letters, if he had applied for them, or whether there was any public administrator in office authorized or fit to take charge of the estate, or to which of these several parties it was meet that the administration should be intrusted, were matters for the consideration and determination of the court; and its action respecting them, however irregular, cannot be impeached collaterally.

The same observations are applicable to the acceptance of the resignation of the first administrator, and the appointment of Ripley in his place. If the second appointment was irregularly made, the irregularity should have been corrected on appeal.

---

* Barber *v.* Winslow, 12 Wendell, 102; Porter *v.* Merchants' Bank, 28 New York, 641.

But, independent of this consideration, there is nothing in the objection. The power to accept the resignation and make the second appointment, under the circumstances of this case, were necessary incidents of the power to grant letters of administration in the first instance. It does not appear that the first administrator ever took possession of the property of the intestate, or attempted to exercise any control over it; and his inability to act left the estate in fact without any administrator. The duty of the court therefore to provide for its proper administration could not otherwise have been discharged than by a new appointment.

But the principal reliance of the plaintiffs is placed upon the objections taken to the action of the Probate Court of Grant County in ordering the sale. With reference to these objections, as with reference to the objections taken to the original appointment of the administrator, it is only necessary to consider them so far as they affect the jurisdiction of the court.

The proceeding for the sale of the real property of an intestate, though had in the general course of administration, is a distinct and independent proceeding authorized by statute only in certain specially-designated cases. But when by the presentation of a case within the statute the jurisdiction of the court has once attached, the regularity or irregularity of subsequent steps can only be questioned in some direct mode prescribed by law. They are not matters for which the decrees of the court can be collaterally assailed.

The statute of the Territory provided that the real estate of a decedent might be sold to satisfy the just debts which he owed, when the personal property of the estate was insufficient to pay the same. And it authorized the Probate Court of the county where the deceased last dwelt, or in which the real estate was situated, to license the administrator to make the sale upon representation of this insufficiency, and "the same being made to appear" to the court. It also required the court, previous to passing upon the representation, to order notice to be given to all parties concerned, or their guardians, who did not signify their assent

to the sale, to show cause why the license should not be granted.

As thus seen, the representation of the insufficiency of the personal property of the deceased to pay his just debts, was the only act required to call into exercise the power of the court. The truth of the representation was a matter for subsequent inquiry. How this should be made to appear the statute did not designate, but from the notice required of the hearing upon the representation, it is clear that the necessity and propriety of the sale solicited were matters to be then considered. A license following such hearing necessarily involved an adjudication upon these points. The jurisdiction to hear was conferred by the representation; the authority to license followed from the fact which the court was required to ascertain and settle by its decision. In such case the decision of the court is conclusive.*

The record of the Probate Court, produced by the defendant, states the fact that a written application for the sale was made. It sets forth the application at length, representing that the personal property of the deceased was insufficient to pay his just debts by the sum of about eight thousand dollars; it gives the order directing publication of notice of the application; it recites that due notice was given; it contains a certificate of the probate justice of Illinois that the personal property of the deceased had been exhausted in payment of his debts, and that there remained debts unpaid to the amount named, and it states, by way of further recital, that it had been made to appear to the court that the sale was necessary and proper to pay such debts of the existence and amount of which due proof had been given.

To this record it is further objected: 1st. That the representation, which was the preliminary step in the proceeding for the sale, did not give the amount and description of the personal property of the deceased, or a statement of the just

---

* Van Steenbergh *v.* Bigelow, 3 Wendell, 42; Jackson *v.* Robinson, 4 Id. 437; Jackson *v.* Crawfords, 12 Id. 534; Atkins *v.* Kinnan, 20 Id. 242, Porter *v.* Purdy, 29 New York, 106; Betts *v.* Bagley, 12 Pickering, 572.

debts which he owed; and 2d. That the order for the sale did not show that the personal property of the estate was insufficient to pay the debts, unless resort was had to the certificate of the probate justice of Illinois.

The answer to the first objection is found in the fact that the statute did not require any such particularity of statement with reference to the property of the deceased, or to the debts which he owed. It only required a representation of the general fact. The particularity desired to guide the court was to be obtained at the hearing of the application.

The answer to the second objection is, that the sufficiency of the proof upon which the court took its action is not a matter open to consideration in a collateral manner. It does not touch the question of jurisdiction.

Similar questions were presented for the consideration of this court, in *Grignon's Lessee* v. *Astor.** That case turned upon the validity of proceedings for the sale of real property of an intestate under a statute almost identical in its provisions with the one under which the sale in the present case was made. And it was there held that the representation was sufficient to bring the power of the court into action; that it was enough that there was something of record which showed the subject before the court, and that the granting of the license was an adjudication upon all the facts necessary to give jurisdiction. That decision disposes of the particular objections stated to the sale in this case.

The record of the subsequent license to the administrator to sell the same property, and its second purchase by the defendant, was properly excluded. It did not show, or tend to show, fraud in the first sale or any collusion between the administrator and the purchaser. The proceeding may have originated in a desire to remove doubts suggested as to the regularity of the original sale, but whether this was so or not, the first sale not being set aside, its validity could not be impaired by the second.

There is no force in the objection that the proceeds of

---

* 2 Howard, 319; see also Florentine *v.* Barton, 2 Wallace, 210.

sales made by the administrator of lands of the intestate amounted to over ten thousand dollars instead of eight thousand, the amount of his alleged debts remaining unpaid. The title of the purchaser could not be affected by the excess.   That was a matter solely for the consideration of the court on the return of the sales by the administrator.

JUDGMENT AFFIRMED.