YATES ROWE and WESLEY ROWE, Executors of the Last Will and Testament of GEORGE ROWE, Deceased, Respondents, v. PHEBE PARSONS, ORRIN PARSONS and GEORGE PARSONS, Survivors, etc, Appellants.

*Administrator's bond — assignment of — Order — date of filing petition for — Surrogate's decree — recitals of, as to jurisdictional facts.*

When a bond running to the people is given by an administrator for the faithful performance of his duty, the order of the surrogate is a sufficient assignment of it.

When it appears that an order was made November twenty-third, and that the petition on which it was based was verified, and was a record in the surrogate's office on that day, the fact that the petition was not marked *filed* till November twenty-sixth, does not impair the validity of the order made thereon.

The recitals in a surrogate's decree, which are full as to all jurisdictional matters, are *prima facie* evidence of its validity when the question arises in a collateral matter.

APPEAL from a judgment in favor of plaintiffs, entered on the verdict of a jury, and from an order denying a motion made on the judge's minutes for a new trial.

The last will and testament of Joel Parsons, deceased, was proved before the surrogate of Columbia county, on the 14th day of April, 1856.

Objection being made to the granting of letters testamentary to the executor named in the will, by order of said surrogate, the defendant Jabez Parsons, together with the defendants Phebe Parsons, Orrin Parsons and one George Rowe, as his sureties, duly executed a bond, conditioned as follows :

" The condition of this obligation is such, that if the above bounden Jabez Parsons, who is named as one of the executors of the last will and testament of Joel Parsons, deceased, and of all and singular the goods, chattels, rights and credits, which were of said deceased, shall faithfully execute the trust reposed in him, as one of the executors therein named, and who is now sole acting executor ; and also shall obey all orders that may from time to time be made by the surrogate, touching the administration of the estate committed to him, then this obligation to be void, otherwise to remain in full force and virtue."

Said bond was, on the 7th day of June, 1856, duly approved by, and filed with, said surrogate; and, thereupon, letters testamentary of said will, were duly issued by said surrogate to Jabez Parsons, as sole executor thereof, who assumed the burden of the execution thereof.

To induce said George Rowe to execute said bond, and to indemnify him, against any loss or damage he might sustain by reason of its execution by him, the defendants Phebe Parsons, Orrin Parsons and George Parsons (who were sister and brothers of Jabez Parsons, the executor), executed and delivered to said Rowe a bond, conditioned as follows:

" The condition of the above obligation is such, that if the above bounden Phebe, Orrin and George Parsons, their heirs, executors or administrators, shall well and truly pay, or cause to be paid, unto the people of the State of New York, or to the heirs, next of kin and creditors of the estate of Joel Parsons, late of the town of Claverack, deceased, all moneys which shall come to the hands of Jabez Parsons, as executor of said estate, and to save and keep harmless the said George Rowe of and from all moneys which he may be liable to pay by reason of his becoming security for said Jabez Parsons on his bond, as executor of said estate, and bearing date this date, then the above obligation to be void, otherwise to remain in full force and virtue."

On the application of said George Rowe (who was a creditor of said Joel Parsons, deceased, having a promissory note of said Joel), said Jabez Parsons was duly ordered and required by the surrogate, to render an account before him, of his proceedings as such executor, pending which proceedings, and on the 8th day of November, 1867, said George Rowe died, leaving a last will and testament, which was duly proved before said surrogate, and letters testamentary thereon were duly issued by him to Yates Rowe and Wesley Rowe, the executors therein named. Thereafter said Yates Rowe and Wesley Rowe were duly substituted as parties to said proceeding or accounting, in place of said George Rowe, deceased, and the proceedings duly continued.

On the 26th day of October, 1868, said surrogate duly made, entered and recorded a decree in said proceedings, wherein, among other things, it was adjudged and decreed: " That the claim of the

said George Rowe, deceased, against the said Joel Parsons, deceased, with the interest upon the same, and the costs, fees and expenses of the proceedings to compel the said Jabez Parsons, as such executor as aforesaid, to render an account of his proceedings in this matter, as this day adjusted by this court, amounts to the sum of $4,375.42. That said Jabez Parsons, as such executor, as aforesaid, received an abundance of assets from and as the estate of the said Joel Parsons, deceased, with which to pay the same, and that he has not applied such assets to the payment and satisfaction of the said claim and demand of the said George Rowe, deceased; and it is further ordered, adjudged and decreed that the said debt and demand of the said George Rowe, deceased, is a lien and charge upon the assets and estate of the said Joel Parsons, deceased. That said Jabez Parsons, as such executor of the last will and testament of the said Joel Parsons, deceased, pay to the said Yates Rowe and Wesley Rowe, as such executors, as aforesaid, of the last will and testament of the said George Rowe, deceased, out of said assets and estate, forthwith, the said sum of $4,375.42, with interest upon the same from and after this date."

A certificate of such decree, was on application of plaintiffs, duly made out by said surrogate in duplicate, one of which was, on November 4, 1868, filed with the clerk of said county of Columbia (the county wherein the said Joel Parsons resided at the time of his decease), and the other, on November 5, 1868, with the clerk of the county of Kings (the county wherein the said Jabez Parsons, executor, then resided), and same was thereupon duly entered and docketed by said clerks, respectively, in their said offices.

Executions upon such certificates so filed, entered and docketed, were duly issued to the sheriffs of said counties of Columbia and Kings, and by both returned wholly unsatisfied.

Thereafter the surrogate of said county of Columbia, on application of said Yates Rowe and Wesley Rowe, executors, duly assigned the said bond so given by said Jabez Parsons as such executor, etc., to them for the purpose of being prosecuted.

Plaintiffs thereupon brought this action upon said executor's bond, to recover the amount of said surrogate's decree.

The defendants first demurred to the complaint, as not stating facts sufficient to constitute a cause of action. The demurrer was

argued before Mr. Justice HOGEBOOM and overruled, and defendants, by leave of the court, answered.

The cause was tried at the Columbia Circuit in January, 1872, before Mr. Justice HOGEBOOM and a jury.

The jury found a verdict for plaintiffs for $5,371.67.

*Newkirk & Chase*, for the appellants.

*Gaul & Esselstyn*, for the respondents.

BOCKES, J. :

Justice demands that there should be no difficulty in the way of a recovery by the plaintiff in this action, on the executor's bond, growing out of the fact that the plaintiff's testator was one of the obligors. The parties who now raise the objection against the recovery on that ground, obligated themselves simultaneously with the making of the bond, in effect, to save Mr. Rowe harmless therefrom. As between Rowe and those obligors, the latter assumed and took upon themselves, the burden and responsibility of the obligation. The papers, when read together, were in effect an agreement on their part with Rowe that he need pay nothing, but that they, would answer all claims that should be made against him on the obligation ; or, to state it more directly, that whenever any question should arise between them, that is, between Rowe or his personal representatives on the one hand, and those obligors on the other, growing out of the enforcement of the obligation, the parties should stand the same as if Rowe's name was not on the bond. This is, manifestly, what the parties intended, and their intention is well evidenced by the papers, construed in the light of the surrounding circumstances.

Again, what is the defense interposed? Is it the non-joinder of Rowe, a co-obligor? The answer to this objection is, that he is dead ; hence the action is well brought against the defendants as survivors. Is it because of Rowe's position on the instrument sued, or of his legal relation to the parties sued? The answer is ready and effectual. He or his personal representatives are on the record, with all other parties interested in the subject-matter of the action ; and under our present system of pleading, the rights

of all may be adjudicated on the facts alleged and proved. The objection to a recovery, on the ground that the plaintiff's testator was a co-obligor on the bond, is not, under the facts here alleged, well taken.

The plaintiffs were authorized to bring the action in their own names, to enforce the defendant's liability on the bond, although it runs to the people. The order of the surrogate was sufficient authority. (*Baggott* v. *Boulger*, 2 Duer, 160; *Cridler* v. *Curry*, 44 How., 345; *Thayer* v. *Clark*, 48 Barb., 243, affirmed in Court of Appeals, but not reported; *Field, Admr.*, v. *Van Cott*, 9 Law Jour., 192.) In the the first case cited it is said that the surrogate acts by order, and that the order is the only assignment contemplated by the statute. An objection is taken to the order, that it purports to have been made on the twenty-third of November, whereas, it appears, that the petition on which it was based, was not filed until the twenty-sixth, three days thereafter. It seems that the petition was sworn to on the twenty-third, and it was a record in the surrogate's office as the foundation of the order of that date. The fact that it was not marked *filed* until the twenty-sixth does not impair the validity of the order made thereon, as it does not overcome the presumption that it was before the surrogate on the twenty-third, when the order purports to have been made. The objection that the order of assignment of the twenty-third of November was without jurisdiction is not well taken.

The principal if not the only remaining question in the case, is, as to the effect to be given to the order or decree of the Surrogate's Court, which recites the proceedings in that court against the executor for an accounting, and directs the payment by him as executor of the plaintiff's claim against the estate, as therein settled and determined.

The order was set out in the complaint, and it was therein alleged, to have been made, on due proceedings in the Surrogate's Court. Issue was raised by the answer, as to all the averments of the complaint relating to such proceedings and order, by a denial of knowledge or information thereof sufficient to form a belief. Thus the plaintiffs were put to proof of the order. When offered in evidence, objection was raised "that there was no sufficient evidence of any facts to authorize the making of the decree, and that it was

not shown that the surrogate had jurisdiction in the matter." The objection was overruled and exception was entered. At the close of the trial the objection was again taken, on the motion to dismiss the complaint, " that the recitals of facts in the decree were not evidence of the facts recited as against the defendants who answered, and in whose behalf the objection was interposed. The motion was denied and exception was entered.

Many other objections were interposed, relating to irregularities or errors in the proceedings before the surrogate, which, however, did not reach the question of jurisdiction. These were properly overruled, as the decree could not be impeached in this action for matters of error merely. If errors existed in those proceedings they should be corrected by appeal from the order.

Let us now return to the objection relating to the jurisdiction of the surrogate, as regards the decree entered on the proceeding for an accounting, and to compel payment, by the executor, of the plaintiff's claim against the estate.

As is often repeated in the books, the Surrogate's Court is one of inferior and limited jurisdiction — a creation of the statute; and, further, that those claiming any benefit from its orders or decrees must show affirmatively the authority for making them, by proof of the facts conferring jurisdiction in the particular case. So far there is no diversity of opinion, and the authorities are numerous in support of those propositions. But the question remains, how may those facts be proved, that is, what shall be deemed evidence of those facts; and how far shall they be held conclusive when proved? They may be established by the production and proof of the proceedings giving jurisdiction, according to the statute, step by step. This is one mode of proof. But is this course absolutely necessary? The learned judge, in the case at bar, held that it was not, that is, he held, in effect, that the recitals in the decree being full to all jurisdictional matters, were *prima facie* evidence of its validity. Now, it has been laid down, that, in a case like this, where the question arises in a collateral action, recitals are to be deemed sufficient and conclusive evidence of every thing recited which is pertinent to the adjudication, except facts constituting jurisdiction; and, as to those facts, the recitals are *prima facie* evidence of jurisdiction. Such seems

now to be the settled law of this State. The subject as to what extent recitals in judgments and decrees should be deemed evidence of the facts recited has been one of difficulty and elaborate discussion, both in England and in this country; and it has been said that, on the question as to how far they should be deemed evidence of facts conferring jurisdiction, "the cases fluctuate from absolute verity to mere nullity." It is, therefore, little profitable to go far back with a view to collate the authorities. It will here suffice, to accept the rule as we now find it declared in this State. In speaking of recitals in the records of courts of limited and special jurisdiction, it is said, in Cowen & Hill's Notes to Phillip's Evidence, that, "in New York we may safely consider these jurisdictional recitals as *prima facie* evidence." In *Bolton* v. *Jacks* (6 Rob., 166), this subject received a very careful examination by JONES, J., who declared the law as follows: "The question next arises, how are the facts, showing jurisdiction in an inferior court, to be proved, when it is desired to put such judgment in evidence in a collateral action? The law in this State is, that if the jurisdictional facts are recited in the proceedings of the court, such recitals are *prima facie* evidence of the facts so recited; if they are not recited they must be proved *aliunde*." The learned judge, after further considering the question, remarks: "In pleading such judgment in a collateral action, the facts showing jurisdiction must be pleaded, but may be proved *prima facie*, either by recitals in the proceedings, or by evidence *aliunde*, if doubt is thrown upon them." The rule thus laid down is also declared in other cases. (*Jenks* v. *Stebbins* 11 Johns., 226; *Van Steenbergh* v. *Bigelow*, 3 Wend., 42; *Barber* v. *Winslow*, 12 id., 102; *Hard* v. *Shipman*, 6 Barb., 621, 625; *Gould* v. *Glass*, 19 id., 179, 188; *Belden* v. *Meeker*, 2 Lans., 470; *Adams* v. *Sar. and Wash. R. R. Co.*, 11 Barb., 414, 455; *Lewis* v. *Penfield*, 39 How., 493; *Potter* v. *Merch. Bank*, 28 N. Y., 641, 652, 653.) Thus it seems that the decree was well proved, being full and complete in its recitals, in the absence of any evidence tending to show a want of jurisdiction. It was, therefore, properly admitted in evidence, and *per se* established all that was necessary relative to that branch of the case. It showed by its recitals, which were *prima facie* evidence of the facts recited, and which were in no way disproved, jurisdiction both of

the subject-matter of the decree, and of the person to be affected or bound by it; and jurisdiction being thus established, the recitals became conclusive evidence of every other fact recited, pertinent to the adjudication.

These considerations will dispose of .the numerous offers of proof, which were directed to errors and irregularities, in the proceedings ·before the surrogate, other than such as were jurisdictional. Those offers were properly overruled. The decree could not be impeached for mere errors in this collateral suit, not affecting the jurisdiction.

There is another view of the case urged upon our consideration. It is insisted, by the plaintiff's counsel, that the defendants, being sureties for the executor on the bond, are estopped from gainsaying the surrogate's jurisdiction in the proceedings relating to the assets, procured by reason of its presentation; and we are referred to *The People* v. *Falconer* (2 Sandf., 81, 83), as an authority to that effect. But the conclusion above stated renders it unnecessary to discuss this point.

We are of the opinion (1), that the plaintiffs may maintain an action for a breach of the bond in suit, on the facts stated in the complaint; (2), that a breach of the bond, is well alleged therein against the defendants; and (3), that all the material averments of the complaint, not admitted by the answer, are sufficiently proved. Nor do we find any error in the record as regards the admission or rejection of evidence affecting the merits.

The order and judgment appealed from must be affirmed, with costs.

LEARNED, P. J., and BOARDMAN, J., concurred.

Judgment and order affirmed, with costs.