## SHIVELY, ET AL. v. HUME, ET AL.

WATER COURSES—EQUITY WILL PREVENT DIVERSION FROM NATURAL CHANNEL.—Every proprietor of land through which flows a stream of water, has a right to the use of the water flowing in its natural channel, without diminution or obstruction, and this is equally true of water which flows in a well defined and constant stream in a subterranean channel. But it need not flow continually; it may at times be dry, but it must have a well defined and substantial existence.

THE interference of equity rests on the principle of a clear and certain right to the enjoyment of the subject in question and an injurious interruption of that right, which, upon just and equitable grounds, ought to be prevented.

APPEAL from Clatsop County.

*W. D. Hare,* for appellants.

*Fred R. Strong,* for respondents.

By the Court, LORD, C. J.:

There is no dispute as to the principles of law applicable to this case. Both parties cite with approbation *Taylor* v. *Welch,* 6 Or., 200, and rely upon the rules of law as therein enunciated as applicable to, and controlling the facts of this case. In *Taylor* v. *Welch, supra,* it was held that every proprietor of land through which flows a stream of water,

has a right to the use of the water flowing in its natural channel, without diminution or obstruction, and that this was equally true of water which flows in a well defined and constant stream in a subterranean channel. But it may be added that it need not be shown that a stream of water flows continually, it may at times be dry, but it must have a well defined and substantial existence. (Angel on Water-courses, secs. 3 and 4 c.)

With this statement of the law, our duty is reduced principally to the examination of two questions of fact: First, Does the evidence prove the existence of a natural water-course, which, from time immemorial, has been accustomed to flow upon and over the lands of plaintiff as alleged? and, second, Have the defendants, by locating a bottomless tank in the manner and at the place as alleged, diverted and entirely deprived the plaintiff of the use and benefit of said water? It is not disputed that the plaintiffs are the owners of lot 7 in block 16, in Shively's Astoria, and that such lot is bounded by Arch street on the south, and west 8th street on the west. Nor is there any dispute as to the existence of a spring of water in Arch street near lot 7, but the contention disclosed by the evidence is, whether the water flowing from the spring runs or flows in its natural channel across the southwest corner of lot 7, or only near such corner, but sufficiently remote to render it impossible to produce the effect or diversion of which plaintiff complains. Nor is there any disagreement in the evidence that "in an early day," and before the town was located and improved in this direction, but what quite a stream of water flowed from the spring at all seasons of the year, and that the "cutting off the brush" and clearing up the land have had the effect to diminish the stream of water, and during the dry season to reduce it to a very small stream." There is no

doubt, however, that there is a stream of water flowing from the spring in a well defined channel, and our first inquiry must be to ascertain its direction from the evidence. One witness says that the spring was located "about 20 feet from the south line of block 16 and ran across lot 7;" another, that "there is a stream which flows upon and across lot 7 in block 16, in Shively's Astoria. It rises in Arch street; it is small; there is no great quantity of water flows over there. I have known of this stream flowing across that lot about nine years; it is a well marked stream and flows over the ground from the spring." Another, referring to 1875 or 1876, says: "When I was first up there, there was considerable of a stream flowing across the corner of lot 7, and my means of knowing where the corner of lot 7 was, that I examined it with a view of purchasing that lot, and that water I supposed was a living stream, and would be on the lot." Another, that "there was a stream of water running over lot 7, block 16. It was a small stream, quite a little amount of water passed through, at some times more than others."

Although there is the testimony of several other witnesses of the same purport, the testimony of these we apprehend is sufficient to indicate the nature of the evidence upon which plaintiffs rely to maintain their right to the use of the water, and, unless overborne by the weight of counter-evidence, to establish the existence of the water-course across the corner of plaintiff's lot. Now the gist of the defendant's evidence is to show that the stream of water, as it flows from the spring, does not run across, but near the corner of plaintiff's lot; but this evidence does not locate the course of the stream outside the limits of plaintiff's lot, if the ownership of that lot extends to the middle of the street. Nor is their evidence entirely uniform in this regard. From the

point at which some of the witness locate the spring, or as some of them say, "where the stream breaks out of the ground," and the direction in which their testimony indicates the stream flows, must meander it across the corner of the lot, although from the changes and improvements made in that quarter of the town, and a lack, perhaps, of an occasion to require any particular or careful observation of the exact direction of the course of the stream, they are not able to testify with any degree of certainty to this fact. Others whose evidence contains the elements of greater certainty, only controvert the fact of the stream running across the southwest corner of the lot, but the evidence of these does not exclude the flow of the stream without that portion of the street belonging to the plaintiff's lot. Mr. Parker limits its nearest approach to the corner to about ten feet. Under the familiar principle that the adjacent owners own to the middle of the street, it is not certain that this evidence, unaided, would not be sufficient to maintain the rights of plaintiff to the use of this watercourse without obstruction or diminution. (*Hinchman, et al.,* v. *Paterson R. Co.,* 17 N. J. Eq., 82; *Bisser* v. *N. Y. Cent. R. R. Co.,* 23 N. Y.; 61; *Adams* v. *Saratoga and Washington R. R. Co.,* 11 Barb., 414; 3 Kent's Com., 432–3; Redfield on Railways, 159, and note cases cited; *Champlin* v. *Pendleton,* 13 Conn., 26.

But the occasion does not require any consideration of that view, as there is a clear preponderance of direct and unequivocal proof of the existence of the water-course in question across the corner of plaintiff's lot as alleged. Have the defendants by the location of the tank in question diverted the stream of water from its natural channel across the lands of plaintiffs, and, by reason thereof, deprived them of a supply of water for the uses and purposes as alleged?

It appears by the evidence that plaintiffs, by means of a barrel or reservoir, which derived its supply of water from the stream, obtained a sufficient quantity of water for household and domestic purposes, and also to supply a few citizens of the town with water, from the sale of which plaintiff derived a small monthly revenue.

Some time in September, 1878, the defendants placed a tank in Arch street about thirty feet south and above the tank of plaintiffs, to which they connected pipes for the purpose of conveying the water, diverted by reason thereof from its natural channel, across the lot of plaintiffs to the mill of Mr. Hume. The natural effect of this diversion was to cut off plaintiffs' supply of water from the watercourse and to deprive them of its accustomed use and benefits. Mr. Shively thus describes the work and its results: "He (Mr. Hume) put a tank in Arch street about twenty-five feet, more or less, above where mine was; it was about thirty feet east and twenty-five feet south of the southwest corner of block sixteen. He conducted the water from this tank into a tank in West Eighth street, north of Arch street, and from thence to his mill. Since Mr. Hume placed that tank in Arch street, very little water has flowed across lot seven. No water has flowed across lot seven, above ground, in the dry seasons in summer, since that tank was put in; if any does I don't know it. No water flowed across lot seven, since this tank was put in, in sufficient quantities to supply the houses on lot seven that I know of.

Another witness, who was in the habit of filling his tank from Mr. Shively's reservoir, says: "The day before I went away from home, I filled up both tanks. I returned home on the 21st of September; I put the hose to the hydrant to fill up the tanks again, and the water did not run. I had a curiosity to know why, and went up to the spring in Arch

street. I found a man who said he was at work for Mr. Morgan, putting in a box in an excavation in the earth. The box was five or six feet long and about three feet wide; its depth I don't know, as it was below the ground; suppose it was three or four feet. The box was about half full of water; or a little over when I saw it. It was sunk in the earth its full depth. The excavation in the earth when the box was sunk was, I think, about fifteen feet above the spring. I looked at the barrel in the spring and saw no water in it. Four or five, or perhaps six days before that, I was there and saw the water in the barrel. I came back to Mr. Morgan and said: 'You have cut off our water.' Mr. Morgan's answer was there was no water in that spring. Some days afterwards, probably a month, I went up to examine the spring to see if there was water there; there was no water there, but there was a plenty running above into Mr. Morgan's tank."

The testimony of these witnesses is uncontradicted and sufficient to show that the locating of the tank at the place described, and by means of pipes connecting it with the mill, resulted in a diversion of the stream from its natural channel across the corner of plaintiffs' lot and deprived them of its use and enjoyment.

"It is a clear principle of law," says Mr. Chancellor Kent, "that the owner of land is entitled to the use of a stream of water which has been accustomed, from time immemorial, to flow through it, and the law gives him ample remedy for the violation of this right. To divert or obstruct a water course is a private nuisance, and the books are full of cases and decisions asserting the right and affording the remedy. The interference of equity rests on the principle of a clear and certain right to the enjoyment of the subject in question, and an injurious interruption of that right, which upon

just and equitable grounds ought to be prevented. (*Gard-ner* v. *Village of Newburg*, 2 John. Ch., 164, and cases cited.)

We do not think the rights of plaintiff in the premises are doubtful, and the decree of the circuit court must be affirmed.

Decree affirmed.